UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>           Plaintiffs,<br><br>v.<br><br>KALSHIEX LLC,<br><br>           Defendants. | No. 2:26-cv-01062<br><br>AMENDED NOTICE OF REMOVAL TO FEDERAL COURT<br><br>[CLERK'S ACTION REQUIRED]<br><br>[*King County Superior Court No. 26-2-10264-3  SEA*] |

TO:        THE CLERK OF THE COURT

AND TO:    STATE OF WASHINGTON, PLAINTIFF

    Defendant KalshiEX LLC ("Kalshi"), by and through its undersigned counsel, hereby files this Amended Notice of Removal.  On March 27, 2026, Kalshi filed an initial Notice of Removal that removed this action pursuant to 28 U.S.C. §§ 1331 and 1441.  This Amended Notice of Removal asserts those same grounds for removal and also adds additional grounds for removal under 28 U.S.C. § 1442.  This Court has federal question jurisdiction over this Action under 28 U.S.C. § 1331.

    By filing this Amended Notice of Removal, Kalshi does not waive any defenses it has to this action whether in state or federal court, including, but not limited to, improper service of

AMENDED NOTICE OF
REMOVAL TO FEDERAL COURT       - 1

process and/or lack of personal jurisdiction.  Kalshi reserves the right to amend or supplement this Amended Notice of Removal.

In support of this Amended Notice of Removal, Kalshi states as follows:

# I.   BACKGROUND

## A.   Defendant

1.   Kalshi is a financial services company that operates a federally regulated derivatives exchange where users can buy and sell financial products known as event contracts, a type of "swap" that references an "excluded commodity" within the meaning of the Commodity Exchange Act of 1936, 7 U.S.C. §§ 1a(19)(iv), 1a(47)(A)(ii) (the "CEA").  Kalshi's exchange is subject to exclusive federal jurisdiction as a designated contract market ("DCM") by the Commodity Futures Trading Commission ("CFTC") pursuant to the CEA, 7 U.S.C. § 2(a)(1)(A).

## B.   Summary of the Complaint

2.   On March 27, 2026, the State of Washington, through the Attorney General's Office, Consumer Protection Division ("Plaintiff"), filed a Complaint for Injunctive and Other Relief against Kalshi in King County Superior Court.  A copy of that Complaint is attached hereto as Exhibit 1.

3.   Plaintiff purports to state claims against Kalshi under Washington's Consumer Protection Act, RCW 19.86, Washington's Gambling Act, RCW 9.46, and the Recovery of Money Lost at Gambling Act, RCW 4.24.070—for hosting and trading *federally regulated* event contracts subject to the CFTC's exclusive jurisdiction.

4.   Plaintiff claims that Kalshi is engaging in illegal gambling as defined under the Washington Gambling Act, RCW 9.46, including "professional gambling" under RCW 9.46.0269 and illegal transmission of "gambling information" via the internet under RCW 9.46.240.  Plaintiff alleges that by offering event contracts on its DCM without authorization under Washington law, Kalshi is violating Washington's gambling statutes.  RCW 9.46.010 *et seq.*

AMENDED NOTICE OF
REMOVAL TO FEDERAL COURT                - 2

5.      As relief, Plaintiff seeks (i) a declaratory judgment decreeing Kalshi's operations in Washington to be unlawful gambling; (ii) a permanent injunction enjoining Kalshi from continuing or resuming the alleged unlawful conduct; (iii) restitution and disgorgement of money or property; (iv) civil penalties under RCW 19.86.140; (v) recovery of money Washingtonians lost at gambling under RCW 4.24.070; and (vi) attorneys' fees and costs.  Ex. 1 at 19-20.

6.      Kalshi has not yet been served with the Complaint.  Accordingly, Kalshi's time to respond to the Complaint by answer or motion has not expired, and Kalshi has not served or filed an answer or motion.

**C.      Kalshi is Already Litigating Identical Issues in Federal Court**

7.      This Action raises issues of federal law substantially similar to those Kalshi has been litigating in federal courts across the country, including in district courts within the Ninth Circuit, since March 2025.  *E.g.*, *KalshiEX, LLC v. Hendrick*, No. 2:25-cv-00575 (D. Nev.). Appeals on similar issues are pending in the Third, Fourth, Sixth, and Ninth Circuits.  *KalshiEX LLC v. Flaherty*, No. 25-1922 (3d Cir.); *KalshiEX LLC v. Martin*, No. 25-1892 (4th Cir.); *KalshiEX LLC v. Schuler*, No. 26-3196 (6th Cir.); *KalshiEX LLC v. Orgel*, No. 26-5235 (6th Cir.); *KalshiEX, LLC v. Assad*, No. 25-7516 (9th Cir.).

8.      Plaintiff filed its Complaint against Kalshi with no warning or dialogue.  Plaintiff's rush to file this Action ignores that whether the CEA preempts state gaming regulations "raise[s] serious questions," *KalshiEX, LLC v. Hendrick*, 2025 WL 3286282, at *12 (D. Nev. Nov. 24, 2025), that are currently before multiple federal courts of appeals.

9.      These serious questions have divided the federal courts.  *See KalshiEX LLC v. Flaherty*, 2025 WL 1218313, at *6-8 (D.N.J. Apr. 28, 2025) (holding state law preempted and granting preliminary injunction in Kalshi's favor); *Blue Lake Rancheria v. Kalshi Inc.*, 2025 WL 3141202 at *7 (N.D. Cal. Nov. 10, 2025) (rejecting argument that Kalshi's event contracts are unlawful gambling); *KalshiEX LLC v. Orgel*, 2026 WL 474869, at *7 (M.D. Tenn. Feb. 19, 2026)

AMENDED NOTICE OF
REMOVAL TO FEDERAL COURT                - 3

(finding "that Kalshi is likely to succeed on the merits because sports event contracts are 'swaps' and conflict preemption applies."); *but see Hendrick*, 2025 WL 3286282, at *14 (dissolving preliminary injunction); *KalshiEX LLC v. Schuler*, 2026 WL 657004, at *10 (S.D. Ohio Mar. 9, 2026) (denying preliminary injunction).

**II.    REMOVAL IS PROPER PURSUANT TO 28 U.S.C. § 1441**

10.    Under 28 U.S.C. § 1441, any civil action filed in state court over which a federal court has original jurisdiction may be removed to the federal district court for the district in which the state court action is pending.  This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims require the adjudication of federal law issues that are "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313-14 (2005).

11.    ***Federal law is necessarily raised.***  Plaintiff's claims require proof that the event contracts at issue are "illegal gambling," which necessarily raises substantial and disputed federal-law issues.  Plaintiff's Complaint repeatedly alleges that Kalshi engages in "Illegal Gambling Activities" in violation of Washington's Consumer Protection Act (Count One) and Recovery of Money Lost at Gambling Act (Count Two).  The Recovery of Money Lost at Gambling Act, RCW 4.24.070, by its terms applies only to "any illegal gambling games."  Plaintiff thus must establish as part of its affirmative case that Kalshi's contracts constitute "illegal" gambling—a determination that requires construing federal law because Kalshi's event contracts are expressly authorized by the CEA and regulated by the CFTC as a registered DCM.

12.    Washington's statute defining "gambling" underscores that federal law is embedded in Plaintiff's affirmative case.  RCW 9.46.0237 defines "gambling" as "staking or risking something of value upon the outcome of a contest of chance or a future contingent event

AMENDED NOTICE OF
REMOVAL TO FEDERAL COURT                - 4

not under the person's control or influence, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome." Critically, however, the statute states that all "bona fide business transactions valid under the law of contracts, including, but not limited to, contracts for the purchase or sale at a future date of securities or commodities" fall outside of the definition of "gambling." *Id*. To establish its affirmative claims, Plaintiff must prove that Kalshi's event contracts fit into the contours of the definition of "gambling" under the statute, which requires construing the federal question of whether Kalshi's event contracts qualify as "contracts for the purchase or sale at a future date of securities or commodities" under federal law.

13.    Plaintiff's claims for "professional gambling" and "bookmaking"—which it characterizes as "Illegal Gambling Activities" for purposes of both its causes of action—likewise require construction of federal law. Under RCW 9.46.0220, "professional gambling" includes accepting "***wagers*** exceeding five thousand dollars during any thirty-day period on future contingent events." Under RCW 9.46.0213, "bookmaking" means "accepting ***bets***, upon the outcome of future contingent events, as a business or in which the bettor is charged a fee or 'vigorish' for the opportunity to place a bet." "Bets" and "wagers" are not expressly defined under Washington law, but they are addressed in the Unlawful Internet Gambling Enforcement Act of 2006 ("UIGEA"), 31 U.S.C. § 5361 *et seq*.

14.    UIGEA is a federal statute, directly on point here, that "prevents using the internet to circumvent existing state and federal gambling laws." *California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960, 965 (9th Cir. 2018). UIGEA defines unlawful internet gambling in interstate commerce as "plac[ing], receiv[ing], or otherwise knowingly transmit[ting] a bet or wager by any means which involves the use, at least in part, of the Internet where such bet or wager is unlawful under any applicable Federal or State law in the State or Tribal lands in which the bet or wager is initiated, received, or otherwise made." 31 U.S.C. § 5362(10). However, UIGEA explicitly

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

excludes from the definition of "bet or wager" any "transaction conducted on . . . a registered entity . . . under the Commodity Exchange Act." 31 U.S.C. § 5362(1)(E)(ii).  As a DCM, Kalshi is a registered entity under the CEA.  Plaintiff cannot demonstrate that event contracts traded in interstate commerce constitute bets or wagers for purposes of its claims without construing UIGEA.  *See, e.g.*, *Rousso v. State*, 239 P.3d 1084, 1088, 170 Wash. 2d 70, 77-78 (2010) ("Nowhere does the UIGEA permit the states to regulate gambling activities outside their borders . . . [nor does] the Wire Act . . . Congress has not delegated to the states its authority to regulate interstate Internet gambling.").

15.    Accordingly, if "gambling" under Washington law were construed to encompass transactions conducted on a registered DCM, such an interpretation would conflict with UIGEA and federal law governing DCMs.  Resolving Plaintiff's claims therefore also "necessarily depends on the application of" UIGEA and the scope of its carve-out for DCM transactions.  *Cf. Ga. Gambling Recovery LLC v. Kalshi Inc.*, 2026 WL 279375, at *3-4 (M.D. Ga. Feb. 3, 2026) (denying motion to remand where plaintiff's claims required resolution of disputed federal questions concerning CEA and CFTC jurisdiction).

16.    ***Federal law is disputed.***  The federal legal issues in this action are substantially similar to those actively in dispute in federal courts across the country.  *See supra* ¶¶ 7-9. Ultimately, whether trading event contracts on a federally regulated DCM is conduct subject to Washington gambling and consumer protection laws is "the central point of dispute" in this Action. *Gunn*, 568 U.S. at 259.

17.    ***The federal question is substantial.***  The question raised under federal law is substantial, as Plaintiff's claims allege that a federally regulated DCM like Kalshi must comply with Washington gambling and consumer protection laws.  In order for Plaintiff to succeed on these claims, the court must adopt a narrow interpretation of the CEA's grant of exclusive

AMENDED NOTICE OF
REMOVAL TO FEDERAL COURT                - 6 -

jurisdiction to the CFTC. *Id.*, 568 U.S. at 261 (explaining that a question is substantial where, for example, it calls into question the validity of a federal statute).

18. ***Capable of resolution without disrupting the federal-state balance.*** This Court is best positioned to resolve the issue of whether Kalshi's business is authorized by federal law and, therefore, subject to exclusive federal regulation, or whether any Washington licensing or compliance is required. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 355-56, 386 (1982) (the CFTC has "exclusive jurisdiction over commodity futures trading"); *In re Int. Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 445 (S.D.N.Y. 2017) (explaining that the CEA was amended in 2010 to "establish a comprehensive new regulatory framework for swaps" and the CFTC was "vested . . . with exclusive jurisdiction to implement that framework" (citation modified)). Such a resolution by this Court, therefore, will not disrupt the federal-state balance but will instead reinforce the harmonious application of federal and state laws, consistent with the Supremacy Clause. U.S. Const. art. VI, cl. 2.

## III.    REMOVAL IS PROPER PURSUANT TO 28 U.S.C. § 1442(a)(2)

19. Removal is also proper pursuant to 28 U.S.C. § 1442(a)(2), which authorizes removal of a state action directed against "[a] property holder whose title is derived from any . . . officer [of the United States or of any agency thereof], where such action . . . affects the validity of any law of the United States." "Unlike the other removal statutes, which courts generally construe against removal, the federal officer removal statute is construed liberally." *Carney v. Washington*, 551 F. Supp. 3d 1042, 1052 (W.D. Wash. 2021) (citing *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007)). This action is removable under this provision because Kalshi's designation as a contract market under the CEA constitutes property derived from the CFTC, and Plaintiff's action directly affects the validity of the CEA.

20. ***Kalshi is a property holder with title derived from the CFTC***. On November 3, 2020, the CFTC approved Kalshi's designation as a contract market pursuant to the CEA. *See*

AMENDED NOTICE OF
REMOVAL TO FEDERAL COURT                    - 7

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

CFTC Designation Order, KalshiEX LLC (Nov. 3, 2020), https://www.cftc.gov/sites/default/files/filings/documents/2020/orgkexkalshidesignation201103. pdf.  Although property is not defined in the removal statute, property is generally understood to include "[a]ny external thing over which the rights of possession, use, and enjoyment are exercised" and "every kind of valuable right and interest that can be made the subject of ownership." *Property*, Black's Law Dictionary (12th ed. 2024).  Kalshi's designation as a contract market qualifies because it provides Kalshi valuable rights and interests that are transferrable pursuant to federal regulations.  *See* 17 C.F.R. § 38.3(d)(1); *see also Title*, Black's Law Dictionary (12th ed. 2024) (defining "title" as "the legal link between a person who owns property and the property itself"); *Mfrs. & Traders Tr. Co. v. Fidelity Nat'l Title Ins. Co.*, 2012 WL 5462887, at *4 (D. Or. Nov. 4, 2012) (defining "title" as "the instrument constituting . . . evidence of the fullest legal right to control and dispose of property" (cleaned up)).

21.     Kalshi's designation as a contract market also cannot be suspended or revoked by the CFTC without cause and only after providing Kalshi notice, a hearing, and an opportunity to appeal to federal court.  7 U.S.C. § 7b ("The failure of a registered entity to comply with any provision of this chapter . . . shall be cause [for suspension or revocation] . . . ." (emphasis added)); 7 U.S.C. § 8(b) (describing process required before suspending or revoking a designation as a contract market).  Those requirements reinforce that Kalshi has a property interest in its designation as a contract market.  *See, e.g.*, *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164-65 (9th Cir. 2005); *Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir. 1980) ("A property interest may be created if 'procedural' requirements are intended to operate as a significant substantive restriction on the basis for an agency's actions.").

22.     ***Plaintiff's action affects the validity of the CEA***.  The removal statute's purpose is to provide "a layer of protection from local prejudice for those acting under federal authority so that the federal government can function." *Carney*, 551 F. Supp. 3d at 1053-54 (citing *Arizona v.*

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Manypenny*, 451 U.S. 232, 242 (1981)); *see also id.* ("The overriding purpose of the statute is to protect the federal government's ability to carry out its legitimate interests through its agencies and officers . . . ."). Thus, a lawsuit affects the validity of a federal law where it "would evade . . . or otherwise frustrate [the law's] aims." *Id.* at 1053-54.

23. Plaintiff's lawsuit would frustrate the CEA's aims. The CEA provides for exclusive federal regulation of transactions on DCMs and seeks to avoid a patchwork of state regulation that conflicts with the CFTC's jurisdiction. *See* 7 U.S.C. § 2(a)(1)(A); *see also* H.R. Rep. No. 93-975, at 76 (1974) ("all exchanges . . . under the same set of rules"). The CFTC confirmed these points in its recently filed amicus brief in the Ninth Circuit. CFTC Amicus Br., *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Feb. 17, 2026), Dkt. No. 38.2 at 2.

24. The CFTC explained that lawsuits like this one "present a fundamental threat to" the CFTC's exclusive jurisdiction over DCMs. *Id.* at 2. The CFTC made clear that the CEA's "exclusive jurisdiction" provision "preempts application of state gambling laws to event contracts trading on DCMs." *Id.* at 21. DCMs "require nationally uniform rules." *Id.* at 1. Congress therefore intended the CEA to "occupy the field" of regulating trading on DCMs. *Id.* at 22. Furthermore, compliance with state-specific prohibitions on contracts would be an "impossibility" for DCMs, because these prohibitions conflict with the "federal mandate to provide impartial national access." *Id.* at 27. And compliance with state regimes would be an "obstacle" to the CEA by creating "the very 'patchwork' that Congress set out to prevent." *Id.* at 27.

25. The CFTC also explained that sports-event contracts, in particular, fall "comfortably" within the CFTC's exclusive jurisdiction. *Id.* at 19. An event need only have "potential" financial consequences under the CEA's "deliberately broad" definition of "swap." *Id.* at 14, 19. Kalshi's contracts turn on "sporting events" that "generate billions of dollars in economic activity." *Id.* at 19. Kalshi's sports event contracts are therefore swaps, and "[s]tates cannot invade the CFTC's exclusive jurisdiction" merely "by re-characterizing swaps trading on

AMENDED NOTICE OF
REMOVAL TO FEDERAL COURT            - 9

DCMs as illegal gambling." *Id.* at 2. Letting them do so would require "redraw[ing] the statutory boundary Congress established." *Id.* at 28. That "is the job of Congress, not the Courts." *Id.* at 17.

26.    As a result, Plaintiff's action affects the validity of the CEA in several ways. This action (i) is a "fundamental threat" to the CFTC's exclusive jurisdiction under the CEA; (ii) conflicts with the CEA's requirement of impartial national access; (iii) risks creating a patchwork of state regulation that the CEA is designed to avoid; and (iv) risks invalidating the definition of "swap" in the CEA. Were states permitted to circumvent the CEA in favor of their own laws, the result would be parallel regulation of the exact same instruments by states and the CFTC—a recipe for "total chaos" that Congress sought to avoid. *Hearings Before the S. Comm. on Agric. & Forestry*, 93d Cong., 2d Sess. 848, at 848 (1974). This difficulty would be compounded exponentially if state regulators could scrutinize (as Plaintiff seeks) every contract offered on every DCM, contract-by-contract, to determine whether any of tens of thousands of contracts may or may not qualify as a derivative—all with the looming threat of civil or criminal enforcement if the regulators conclude that any such contract is not a derivative after all. If permitted, this regime would raise "the same unwelcome specter of non-uniformity" that Congress sought to eliminate when it created the CFTC. *Am. Agric. Movement, Inc. v. Bd. of Trade of City of Chicago*, 977 F.2d 1147, 1156-57 (7th Cir. 1992).

**IV.    REMOVAL IS PROPER PURSUANT TO 28 U.S.C. § 1442(a)(1)**

27.    Removal is also proper under 28 U.S.C. § 1442(a)(1) due to Plaintiff's artful pleading. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983); *California ex rel. Harrison v. Express Scripts, Inc.*, 154 F.4th 1069, 1081 (9th Cir. 2025) (finding "artful pleading for purposes of circumventing federal officer jurisdiction" impermissible (citation modified)). Joinder of the CFTC—a necessary party here—would create removal jurisdiction under 28 U.S.C. § 1442(a)(1). Plaintiff's strategic failure to join the CFTC in this

AMENDED NOTICE OF
REMOVAL TO FEDERAL COURT                    - 10

action cannot allow it to defeat jurisdiction. *Cf. Bright v. Bechtel Petrol., Inc.*, 780 F.2d 766, 769 (9th Cir. 1986) ("A plaintiff will not be allowed to conceal the true nature of a complaint through 'artful pleading.'") (citation omitted).

28.    Plaintiff seeks injunctive relief under Washington's Consumer Protection Act, asking the court to enjoin Kalshi "and all other persons acting . . . in concert or participation with Defendant" from continuing or resuming the alleged conduct. Compl. ¶7.4, RCW 19.86.080. Under Wash. Super. Ct. Civ. R. 19 ("CR 19"), such relief requires naming as parties any person if "in the person's absence complete relief cannot be accorded among those already parties."

29.    In 2020, the CFTC designated Kalshi as a contract market, and Kalshi offers the event contracts that are the focus of Plaintiff's complaint pursuant to that designation and under the CFTC's jurisdiction. Plaintiff is aware that the CFTC has identified, as outlined above, a "substantial interest" in the "scope of its exclusive jurisdiction," including the "CEA's preemption of state laws attempting to regulate trading on CFTC-registered contract markets" like Kalshi. Mot. of CFTC for Leave to File Out-of-Time Amicus Curiae Br. at 1-2, *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187, Dkt. No. 30.1, at 1-2 (9th Cir. Feb. 5, 2026). Indeed, Washington's Attorney General recently signed an amicus brief, on behalf of the State of Washington, challenging the CFTC's authority to regulate derivatives and criticizing the CFTC's position. *See* Brief of Amici Curiae at 1, *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Mar. 10, 2026), Dkt. No. 76.1 ("In [the CFTC's] brief, the CFTC wrongly argues that federal law displaces the States' ability to regulate sports betting.").

30.    Nevertheless, Plaintiff failed to name the CFTC as a party. Had it done so, as required by CR 19, that would have provided yet another basis for removal under 28 U.S.C. § 1442(a)(1). Plaintiff "may not defeat removal" through artful pleading. *Franchise Tax Bd.*, 463 U.S. at 22.

AMENDED NOTICE OF
REMOVAL TO FEDERAL COURT                     - 11

## V.  KALSHI MEETS THE PROCEDURAL REQUIREMENTS FOR REMOVAL

31.  Removal is timely.  Plaintiff filed the Complaint on March 27, 2026, and Kalshi filed its initial Notice of Removal the same day.  Kalshi has not yet been served with the Complaint. 28 U.S.C. §§ 1446(b)(1) and (c)(1); *see Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

32.  Venue is proper pursuant to 28 U.S.C. §§ 128, 1441(a), 1442, and 1446(a) because the United States District Court for the Western District of Washington is the federal judicial district court embracing King County Superior Court, where the Complaint was filed.

33.  In accordance with 28 U.S.C. § 1446(d), written notice of this Amended Notice of Removal will be promptly provided to Plaintiff and filed with King County Superior Court.  A copy of the Notice of Filing of Notice of Removal is attached hereto as Exhibit 2.

34.  No previous application has been made for the relief requested in this Notice of Removal.

### CONCLUSION

WHEREFORE, Kalshi respectfully requests that the Action be removed from King County Superior Court to the United States District Court for the Western District of Washington and that this Court accept jurisdiction.  If any question arises as to the propriety of removal, Kalshi respectfully requests the opportunity to present oral argument.

///

///

///

///

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

DATED this 30th day of March, 2026.


CORR CRONIN LLP


s/ Steven W. Fogg
Steven W. Fogg, WSBA No. 23528
1015 Second Avenue, Floor 10
Seattle, WA  98104-1001
Ph: (206) 625-8600
sfogg@corrcronin.com


MILBANK LLP

NEAL KUMAR KATYAL (Pro hac vice forthcoming)
JOSHUA B. STERLING (Pro hac vice forthcoming)
WILLIAM E. HAVEMANN (Pro hac vice forthcoming)
GRANT R. MAINLAND (Pro hac vice forthcoming)
MATTHEW LAROCHE (Pro hac vice forthcoming)
ANDREW L. PORTER (Pro hac vice forthcoming)

Attorneys for Defendant KalshiEX LLC

AMENDED NOTICE OF
REMOVAL TO FEDERAL COURT                - 13