UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, | No. 2:26-cv-01062 |
| Plaintiff, | DECLARATION OF STEVEN W. FOGG IN SUPPORT OF AMENDED NOTICE OF REMOVAL |
| v. | |
| KALSHIEX LLC, | [*King County Superior Court No. 26-2-10264-3  SEA*] |
| Defendant. | |

I, Steven W. Fogg, declare and state as follows:

1.      I am a partner at Corr Cronin LLP and a member of the Washington State bar. I am counsel for Defendant KalshiEX LLC in the above-captioned matter. I am over eighteen years of age, am competent to testify, and submit this declaration based upon my personal knowledge.

2.      Attached hereto as **Exhibit 1** is a copy of the operative complaint filed in the Superior Court of the State of Washington for King County, Cause No. 26-2-10264-3 SEA, in the matter entitled *State of Washington v. KalshiEX LLC.*

3.      Attached hereto as **Exhibit 2** is a copy of the Notice to Superior Court of Filing of Amended Notice of Removal concurrently filed in the Superior Court of the State of Washington for King County, Cause No. 26-2-10264-3 SEA, in the matter entitled *State of Washington v. KalshiEX LLC.*

DECLARATION OF STEVEN W. FOGG ISO
AMENDED NOTICE OF REMOVAL          - 1

DATED this 30th day of March, 2026 at Seattle, Washington


*s/ Steven W. Fogg*
Steven W. Fogg, WSBA No. 23528

DECLARATION OF STEVEN W. FOGG ISO
AMENDED NOTICE OF REMOVAL                - 2

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# Exhibit 1

**STATE OF WASHINGTON**
**KING COUNTY SUPERIOR COURT**

| | |
|---|---|
| STATE OF WASHINGTON, | NO. |
| Plaintiff, | COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF |
| v. | |
| KALSHIEX, LLC, | |
| Defendant. | |

## I.    INTRODUCTION

1.1    KalshiEx, LLC ("Kalshi") claims to have "cracked the code on legal betting in all 50 states" through its online betting platform. Kalshi offers and advertises a continuous and captivating stream of opportunities to bet money online on thousands of topics ranging from sports and elections to the total number of "measles cases this year," "what will the witnesses say during the Child Trafficking hearing," and whether Ali Khamenei will be "out as Supreme Leader" of Iran, all while Kalshi takes a cut of the action. Under longstanding, well-established, and unambiguous Washington state law, Kalshi's gambling operation is illegal.

1.2    Washington has some of the most restrictive gambling laws in the United States. The Washington Constitution of 1889 explicitly prohibited all gambling activities on state lands, and Washington continues to tightly regulate gambling to this day. In 2006, the Washington State Legislature expressly banned online gambling, finding that "with the advent of the internet and other technologies . . . it is appropriate for this legislature to reaffirm the policy prohibiting gambling that exploits such new technologies." Laws of 2006, ch. 290, § 1. That prohibition

COMPLAINT FOR INJUNCTIVE
AND OTHER RELIEF - 1

remains in effect, with the sole exception of sports wagers placed and accepted on tribal lands. RCW 9.46.240.

1.3     In direct violation of this prohibition and public policy, Kalshi operates its online betting market nationwide, including in Washington and other states that prohibit online gambling. In its advertising and marketing, Kalshi specifically promotes illegal online sports gambling in Washington state.



1.4     Kalshi's platform extends well beyond sports gambling, however, to include betting on politics, news, entertainment and cultural topics, so-called 'mention markets' that urge bettors to wager on what will be said during public broadcasts, and thousands upon thousands of niche issues—all available online 24/7. Indeed, Kalshi boasts that it has made it possible to "bet on anything" by restructuring and rebranding traditional gambling models as "predictive markets." In so doing, Kalshi is driving an explosion of online gambling activity, while openly violating Washington law, and turning a profit in the process.

1.5     Kalshi's gambling operations violate numerous provisions of Washington's Gambling Act, as well as the Consumer Protection Act and the Recovery of Money Lost at

COMPLAINT FOR INJUNCTIVE
AND OTHER RELIEF - 2

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Gambling Act. The Attorney General accordingly brings this enforcement action in the name of the State and as *parens patriae* on behalf of persons residing in Washington to prevent and remedy Kalshi's unlawful, unfair, and deceptive business practices and to vindicate the public interest.

## II.    JURISDICTION AND VENUE

2.1    The Attorney General files this Complaint to enforce Washington's Consumer Protection Act, RCW 19.86 (CPA), Gambling Act, RCW 9.46, and Recovery of Money Lost at Gambling Act, RCW 4.24.070 (RMLGA). This Court has jurisdiction under these statutes, as well as RCW 2.08.010 and RCW 7.24.010.

2.2    Kalshi has engaged in the conduct set forth in this Complaint in King County and elsewhere in the State of Washington.

2.3    Venue is proper in King County pursuant to RCW 4.12.020 and RCW 4.12.025, and Civil Rule 82 because Kalshi transacts business in King County by offering, operating, conducting, marketing, promoting, and/or distributing unlicensed and illegal gambling activities, including, without limitation, illegal gambling games, bookmaking, sports wagering, professional gambling and/or gambling devices (hereinafter, collectively, "Illegal Gambling Activities"), to consumers in King County.

## III.    PARTIES

3.1    The Plaintiff is the Washington State Attorney General's Office, Consumer Protection Division.

3.2    The Attorney General is authorized to commence this action pursuant to RCW 19.86.080, RCW 19.86.140, and RCW 43.10.030 to address practices that violate the CPA, the Gambling Act, and the RMLGA, and to vindicate the rights of the public because Illegal Gambling Activities are matters of public concern. RCW 9.46.010, .0213, .0269, .038, .0368, .903.

COMPLAINT FOR INJUNCTIVE
AND OTHER RELIEF - 3

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

3.3    Defendant Kalshi is a Delaware limited liability company with its principal place of business located at 594 Broadway, Suite 407, New York, New York 10012. Kalshi is a wholly owned subsidiary of Kalshi, Inc. Kalshi is not licensed by the Washington State Gambling Commission to conduct online gambling.

3.4    Kalshi conducts business throughout King County and throughout Washington State by offering, operating, conducting, marketing, promoting, and/or distributing unlicensed and Illegal Gambling Activities to Washington consumers. Kalshi offers, operates, and advertises in Washington State, and it collects fees from bets made within Washington State.

## IV.    FACTS

### A.    The Evolution of Kalshi's Unlawful Gambling Activity

4.1    Tarek Mansour and Luana Lopes Lara founded Kalshi in 2018. "Kalshi" means "everything" in Arabic, reflecting the founders' vision of allowing people to "bet on everything."[1] Indeed, Kalshi advertises that it has "cracked the code on legal betting in all 50 states" for "sports markets" and "everything else."

Kalshi - Trade the Headlines
Sponsored · Paid for by KALSHI INC.
Library ID: 1233804148260706

Kalshi cracked the code on legal betting in all 50 states.

Using a financial exchange license, we're opening up sports markets—and everything else - for all Americans.

Business

**Two MIT Math Nerds Crack Open Legalized Gambling on Wall Street**

Armed with a federal license and allies in Trumpworld, the tech start-up is pushing prediction markets across America into a legal gray zone: sports betting.

---

[1] Oliver Roeder, *This 29-year-old is worth $15b and wants you to bet on everything*, Australian Financial Review (Feb. 10. 2026), https://www.afr.com/companies/games-and-wagering/this-29-year-old-is-worth-15b-and-wants-you-to-bet-on-everything-20260210-p5o0x0 (last accessed March 26, 2026).

COMPLAINT FOR INJUNCTIVE
AND OTHER RELIEF - 4

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

4.2    Kalshi's platform became publicly available in 2021, initially offering a limited selection of topics. Over time, Kalshi rapidly expanded both the scope of its offerings and the reach of its platforms. By 2024, Kalshi began allowing bets on politics, advertising that "[y]ou can't bet on sports," but "[f]or the first time in 100 years, you can now bet on the election!"



4.3    Kalshi's political betting offerings include primary and general election outcomes, voter turnout, party control of Congress, and results in swing states. For example, bettors could wager on the outcome of the 2025 King County Executive race and can currently wager on the various 2026 House primaries in Washington congressional districts, the 2028 Washington gubernatorial race, which party will control the Washington State Senate in 2028, and the outcome of the 2028 U.S. presidential election. Kalshi also offers Washingtonians opportunities to bet on numerous political issues and elections outside the United States including, as one of many examples, who will become the next mayor of Lyon, France.

COMPLAINT FOR INJUNCTIVE
AND OTHER RELIEF - 5

4.4     In 2025, Kalshi launched "mention markets," which encourage betting on whether specific words or phrases will be used by public speakers—including politicians, sports announcers, and actors—during speeches, television shows, or broadcasts. For example, Kalshi permitted bettors to wager on whether Survivor host Jeff Probst would say the words "alliance," "immunity idol," or "tribe has spoken."



4.5     In early 2025, Kalshi announced its entry into the sports betting market just ahead of the Super Bowl and today sports betting constitutes a substantial percentage of Kalshi's platform.

4.6     In August and September 2025, Kalshi expanded its sports betting options by offering spread bets (a bet on the difference in score between two competing sports teams), over/under wagers (a bet on how many total points will be scored in a sports game), and proposition bets (bets on specific things that may occur within a sports game, such as the number of touchdowns a football player might score during the game).

COMPLAINT FOR INJUNCTIVE
AND OTHER RELIEF - 6

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

4.7    For example, Kalshi offered bets on whether the Gonzaga University Bulldogs would beat the Seattle University Redhawks by more than 11.5 points, or whether the teams would combine to score more than 149.5 points total, during a midseason college basketball game.





4.8    In recent months, Kalshi began offering "combo" bets, known to sports bettors as a "parlay." These bets link the outcomes of multiple wagers, where each wager must win to get a payout. To place a "combo" bet, a Kalshi user links together multiple wagers and submits a Request for Quote (RFQ). RFQs are reviewed by designated entities who have access to Kalshi's Application Programming Interface (API) and act like a traditional casino "house," calculating odds and prices for each combo bet.

COMPLAINT FOR INJUNCTIVE
AND OTHER RELIEF - 7

4.9    Over time, the scope of Kalshi's offerings has expanded to a nearly limitless array of political, popular culture, and other issues to bet on, including, for example, the total number of "measles cases this year" and "what will witnesses say" during a child trafficking hearing.

 

4.10    Kalshi also allowed bets on when Ali Khamenei would be "out as Supreme Leader" of Iran.



4.11    Kalshi's bet-on-anything model is designed to provide a constant stream of wagering opportunities, generating ever-greater volumes of betting activity, and driving up Kalshi's profits.

**B.    Kalshi's Betting Platform**

4.12    Kalshi operates its online betting platform on its website at https://kalshi.com and through its mobile applications for Android and Apple iOS devices. The platform is readily accessible to Washington residents and does not restrict access based on location. Any

COMPLAINT FOR INJUNCTIVE
AND OTHER RELIEF - 8

Washingtonian over 18 years old can create an account, deposit funds, and place bets from anywhere in the state.

4.13    Kalshi collects transaction fees, which vary depending on the expected earnings, of each bet. Kalshi also charges bettors fees for certain types of deposits and withdrawals from their accounts.

4.14    The price of an individual bet on Kalshi fluctuates between $0.01 and $0.99 per bet, exclusive of any transaction fees. The individual bet price is determined by the volume of "yes" and "no" bets on an underlying question. As more "yes" bets get placed compared to "no" bets for a question, the price of a "yes" bet goes up and the price of a "no" bet goes down.

4.15    If the price of a bet changes before the underlying question resolves, bettors can "sell" their bets at the updated price. Once the question is resolved, winning bettors receive $1 and losing bettors receive $0.

4.16    Kalshi's platform matches bettors on opposite sides of a particular wager. For example, if Kalshi offers a bet asking, "Will the Seattle Mariners win their game on Friday?" a user might want to bet "yes" at 0.65 cents, expecting the Mariners to win. To complete the wager, another Kalshi user must take the opposite side of this bet. If the Mariners win, the first user receives the full $1.00 payout, and the second user receives nothing. Regardless of the outcome, Kalshi takes its transaction fees from both users.

4.17    In order to ensure a sufficient volume of betting activity on both sides of a bet, Kalshi uses so-called "market makers," including its own affiliated entity, Kalshi Trading LLC ("Kalshi Trading"), to place bets. Individual Kalshi users never know whether they are betting against other bettors or against a market maker like Kalshi Trading. In this way, Kalshi plays a role similar to that of the house in a traditional gambling model.

COMPLAINT FOR INJUNCTIVE
AND OTHER RELIEF - 9

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

**C.   Kalshi's Illegal Gambling Activity Violates Washington's Strict Gambling Laws and Public Policy**

4.18   Under Washington law, every core feature of Kalshi's Illegal Gambling Activities—its wagers, fees, and online transmission of gambling information—constitutes illegal online gambling.

4.19   Since Washington's founding in 1889, gambling has been tightly regulated in the state. This long-standing public policy protects the health, welfare, and safety of Washingtonians.

4.20   Over time, the Legislature has reaffirmed the need to regulate gambling in light of advancing technologies. In 2006, the Washington Legislature passed Substitute Senate Bill 6613 (SSB 6613), reaffirming that all forms of internet and electronic gambling remain prohibited, unless explicitly authorized.[2] Section 1 of SSB 6613 states:

> It is the policy of this state to prohibit all forms and means of gambling, except where carefully and specifically authorized and regulated. With the advent of the internet and other technologies . . . it is appropriate for this legislature to reaffirm the policy prohibiting gambling that exploits such new technologies.[3]

4.21   SSB 6613, codified at RCW 9.46.240, effectively banned all online gambling in Washington. *See Rousso v. State*, 170 Wn.2d 70, 74-75, 239 P.3d 1084 (2010) (RCW 9.46.240 "criminalizes the knowing transmission and reception of gambling information by various means, including use of the Internet. Since sending and receiving gambling information is illegal, Internet gambling in the state of Washington is effectively banned.").

4.22   Kalshi's Illegal Gambling Activities meet every element of the definition of gambling under state law. Washington's Gambling Act defines "gambling" broadly to include "staking or risking something of value upon the outcome of a contest of chance or a future

---

[2] SSB 6613, 59th Leg., Reg. Sess., Laws of 2006, ch. 290 ("reaffirming and clarifying the prohibition against internet and certain other interactive electronic or mechanical devices to engage in gambling[.]").

[3] *Id*., § 1.

COMPLAINT FOR INJUNCTIVE
AND OTHER RELIEF - 10

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

contingent event not under the person's control or influence, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome." RCW 9.46.0237.

4.23   A "contest of chance" means "any contest, game, gaming scheme, or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein." RCW 9.46.0225.

4.24   A "thing of value" means "any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise, directly or indirectly, contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge." RCW 9.46.0285.

4.25   On Kalshi, bettors wager on issues ranging from sports scores, political elections, popular culture to you-name-it. Each bet risks money, relies in part on chance, and promises a payout to winners. Kalshi's Illegal Gambling Activities therefore constitute gambling under Washington law.

4.26   Kalshi's Illegal Gambling Activities also constitute "professional gambling," which is illegal in Washington. RCW 9.46.220-.222. "Professional gambling" occurs when an entity "knowingly accepts or receives money or other property pursuant to an agreement or understanding with any other person whereby he or she participates or is to participate in the proceeds of gambling activity." RCW 9.46.0269. Kalshi charges fees for every bet and ensures liquidity through its affiliated entity, Kalshi Trading. By facilitating wagers, absorbing unmatched bets, and collecting fees, Kalshi profits from professional gambling at every stage.

4.27   Kalshi also engages in illegal "bookmaking" under state law by accepting bets as a business and charging a fee to place bets on its platform. Washington considers "bookmaking"—accepting bets for a fee—to constitute illegal "professional gambling." RCW 9.46.0213; RCW 9.46.0269(d); RCW 9.46.220-.222; *see Internet Cmty. & Ent. Corp. v.*

COMPLAINT FOR INJUNCTIVE
AND OTHER RELIEF - 11

*Washington State Gambling Comm'n*, 169 Wn.2d 687, 694-95, 238 P.3d 1163 (2010) (finding "bookmaking" includes "either accepting bets as a business or charging a fee for the opportunity to place a bet" and is "therefore professional gambling under RCW 9.46.0269").

4.28    Kalshi also transmits gambling information on the internet and maintains equipment to do so, in violation of Washington law. RCW 9.46.240. "Gambling information" means "any wager made in the course of and any information intended to be used for professional gambling. . . . [I]nformation as to *wagers, betting odds and changes in betting odds shall be presumed to be intended for use in professional gambling*." RCW 9.46.0245 (emphasis added); *see Internet Cmty.*, 169 Wn.2d at 695-96 (finding that "information on wagers and odds [online betting platform] received from its users must be presumed, under the plain terms of the statutes, as intended for use in professional gambling"). Kalshi's website and mobile applications, which provide real-time odds and match users for wagers, clearly fall within this prohibition.

4.29    Kalshi likewise violates Washington's prohibition of internet gambling, which "introduces new ways to exacerbate the[] same threats to health, welfare, safety, and morals" as traditional gambling, including "gambling addiction" and "other societal ills." *See Rousso*, 170 Wn.2d at 82. Online sports wagers are illegal in Washington unless "placed and accepted at a tribe's gaming facility [and] only while the customer placing the wager is physically present on the premises of that tribe's gaming facility." RCW 9.46.0368. Kalshi violates Washington law by allowing Washingtonians to place online bets from anywhere in the state.

4.30    Finally, Kalshi also violates Washington's prohibition on gambling records and unlicensed gambling devices. "Gambling records" include "any record, receipt, ticket, certificate, token, slip or notation given, made, used or intended to be used in connection with professional gambling." RCW 9.46.0253; RCW 9.46.217; *see Internet Cmty.*, 169 Wn.2d at 696 ("Because we hold that [online betting platform] was engaged in professional gambling, it necessarily follows that it used 'gambling records' as part of its business."). "Gambling devices" include "any device . . . or installation designed primarily for use in connection with professional

gambling" such as "electronic games of chance." RCW 9.46.0241. Kalshi's website and mobile apps constitute "gambling devices" and all of Kalshi's records in connection with its professional gambling platform constitute illegal "gambling records" under Washington law.

4.31    Every aspect of Kalshi's Illegal Gambling Activities, from engaging in unlicensed gambling in violation of RCW 9.46.160 to illegal bookmaking and transmitting gambling information through online gambling devices, constitutes illegal gambling in Washington. Kalshi profits from each of these unlawful activities, in direct violation of the explicit prohibitions in state law and Washington's longstanding public policy of tightly regulating gambling to protect the health, welfare, and safety of its residents.

**D.    Kashi Provides and Promotes Addictive Gambling Activities**

4.32    Gambling addiction is a public health crisis throughout the country, including in Washington. Approximately 2.5 million adults in the U.S. engage in compulsive gambling and suffer from gambling disorder, a clinically recognized behavioral addiction. An additional five to eight million adults experience problems due to their gambling behavior, with often devastating consequences to the individuals involved, their families, and communities.[4]

4.33    According to the 2021 Washington State Adult Problem Gambling Prevalence Study, among Washington adults who gambled, 3.5% would likely be diagnosed with gambling disorder (1.5% of all adults), and 17% were at an increased risk for problem gambling (7.5% of all adults).[5]

4.34    The Washington State Adult Problem Gambling Prevalence Study further found that the prevalence of moderate-to-severe problem gambling was substantially higher among "online gamblers" (10.3%) compared to all gamblers (3.5%). Additionally, "online gamblers"

---

[4] Nat'l Council on Problem Gambling, Problem Gambling Fact Sheet, www.ncpgambling.org/wp-content/uploads/2025/01/PGAM-2025-Problem-Gambling-Fact-Sheet.pdf (last accessed March 26, 2026).

[5] Washington State Health Care Authority, 2021 Washington State Adult Problem Gambling Prevalence Study Results: Report to the Legislature (June 30, 2022), at iv, www.evergreencpg.org/wp-content/uploads/2022/12/wa-state-adult-problem-gambling-prevalence-study-final-2021.pdf (last accessed March 26, 2026).

COMPLAINT FOR INJUNCTIVE
AND OTHER RELIEF - 13

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

were almost four times as likely to experience problem gambling compared to gamblers who only gambled at brick-and-mortar venues such as Washington's tribal casinos where sports gambling is legal in Washington (10.3% as compared to 2.6%).[6]

4.35    The American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) categorizes gambling disorder as an "addictive disorder," making it the only defined behavioral addiction recognized in the DSM-5. The symptoms of gambling disorder include an increased tolerance for gambling (i.e. wagering more money over time), repeated unsuccessful efforts to control, reduce, or stop gambling behavior, and lying or concealing the extent of gambling involvement from others.[7]

4.36    Gambling stimulates the brain's dopamine center and reward system and leads gamblers to participate in risky behavior and risk their money in the hopes of gaining the "high" of a winning wager. Over time, this continuing chase for the "gambler's high" often leads to addiction.

4.37    Gambling addiction can destroy the lives of the gamblers, but the destructive effects of compulsive gambling are not limited to the gamblers themselves. Gambling disorders also negatively affect spouses, partners, children, and others. Studies show for example that gambling disorders are associated with higher rates of domestic and intimate partner violence.[8]

4.38    Kalshi's advertising targets young adults, particularly young men, to place bets on its platform. Young men are at a disproportionally higher risk of developing problem

---

[6] *Id.* at vii.

[7] American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013).

[8] Nerilee Hing et al., *An integrative review of research on gambling and domestic and family violence: Fresh perspectives to guide future research*, 13 Frontiers Psych., Oct. 2022 [https://doi.org/10.3389/fpsyg.2022.987379]; *see also*, American Gaming Association, "Engaging in Responsible Play," https://www.americangaming.org/responsibility/ (last accessed March 26, 2026).

COMPLAINT FOR INJUNCTIVE
AND OTHER RELIEF - 14

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

gambling behaviors.[9] Yet, Kalshi is expanding its reach among college students by leveraging social media campaigns and student influencers, amplifying exposure to this high-risk group.[10]

4.39    The risks and harms associated with online gambling are also greater than with in-person gambling (such as that permitted at Washington's tribal casinos) because mobile devices are a necessity of life and people carry them everywhere. From their mobile phones and other devices, users can gamble on Kalshi anywhere and at any time—at home, at work, at lunch, at their children's soccer games, on vacation, or anywhere else that receives a signal.

4.40    Kalshi's online betting platform is addictive and can lead to gambling disorder in the same way as any other form of gambling. Kalshi has admitted as much itself by advertising on Instagram that Kalshi, in its own words, is "kind of addicting."[11]

4.41    Kalshi encourages gambling and potential addiction by including features on its apps that are designed to encourage continued engagement, attention, and betting. These include behavioral design mechanisms meant to encourage impulsive engagement, push notifications to users' phones, and advertisements through sponsored influencers.

4.42    Kalshi encourages high-risk gambling behavior by emphasizing reward while minimizing risk. When placing a bet, Kalshi highlights potential payouts in bright green font, a color synonymous with safety. In contrast to the bright green payout information, information associated with risk and negative consequences, like betting costs and odds, is left in standard black text.

[9] Vincent O. Mancini et al., *Predicting Problem Gambling in Young Men: The Impact of Sports Gambling Frequency and Internalizing Symptoms*, 41 J. Gambling Stud. 1119 (2025), https://pmc.ncbi.nlm.nih.gov/articles/PMC12361320/ [https://doi.org/10.1007/s10899-025-10403-0].

[10] Katherine Long et al., *'Is This Insider Information?' The Prediction Market Bets Driving a Campus Frenzy*, Wall St. J. (Mar. 5, 2026), https://www.wsj.com/business/media/prediction-markets-campus-e57cd19f?reflink=desktopwebshare_permalink.

[11] Dustin Gouker, "Kalshi Says It's 'Kind of Addicting' in Instagram Post," Event Horizon (Oct. 21, 2025), https://nexteventhorizon.substack.com/p/kalshi-says-its-kind-of-addicting (last accessed March 26, 2026).

COMPLAINT FOR INJUNCTIVE
AND OTHER RELIEF - 15

4.43    Kalshi promotes competition between bettors on its platform to increase impulsive gambling and transaction volume. For instance, Kalshi encourages bettors to create "Ideas" profiles that include nicknames and profile photos so they can interact with other bettors on the platform. These social profiles can publicly display detailed betting histories, including potential payouts and total number of bets. Bettors use their "Ideas" profiles to like, bookmark, and reply to others' posts.

4.44    Kalshi also encourages bettors to join its "leaderboard," where they can "track" their performance and become part of Kalshi's "competitive environment." Bettors navigate to the "leaderboard" page by clicking a gold trophy symbol, which then ranks bettors by daily, weekly, monthly, and all-time profits, and by trading volumes.

4.45    Kalshi further encourages continued engagement and more bets on its platform by showing users what "people are also buying" and displays what "people also bought" after a user makes a bet.

4.46    Kalshi markets to individuals who already engage in gambling. For example, Covers.com, a gambling publication and Kalshi sponsor, offers a $10 bonus for joining the Kalshi platform. Covers.com describes itself as a sports betting information outlet "[w]here people who love the risk and rush of competition come together," and as being part of a "world-class team in sports betting and gaming" that reaches "millions of players each year."

4.47    Kalshi also attempts to hook and take advantage of bettors by intentionally conflating its gambling scheme with traditional investments, representing that Kalshi's "events contracts" are financial products, rather than simply an opportunity to wager money.

4.48    For example, Kalshi's marketing slogans, such as "everyone is an expert at something" and "trade what you know" create the deceptive impression that placing online wagers on Kalshi is not gambling, but making use of a skill-based financial tool.

COMPLAINT FOR INJUNCTIVE
AND OTHER RELIEF - 16

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

4.49    Kalshi's design features exploit psychological triggers, enticing frequent and continuing transactions, and driving disordered consumption and addictive behavior, while Kalshi reaps ever increasing profits.

4.50    Kalshi is now fueling a public health crisis in Washington by promoting and providing illegal online betting in the state under the guise of "events trading" in a financial "prediction market."

## V.    FIRST CAUSE OF ACTION
### (Unfair and/or Deceptive Conduct in Violation of the Consumer Protection Act, RCW 19.86)

5.1    Plaintiff incorporates each of the foregoing paragraphs herein as if set forth in their entirety.

5.2    The Attorney General may obtain injunctive relief, as well as monetary relief, including restitution, disgorgement, civil penalties, and recovery of costs and fees for violations of the Consumer Protection Act. RCW 19.86.080, .140.

5.3    The Consumer Protection Act prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020.

5.4    Kalshi's provision, marketing, and advertising of Illegal Gambling Activities constitute unfair and/or deceptive acts or practices in trade or commerce under RCW 19.86.020.

5.5    Kalshi's provision, marketing, and advertising of Illegal Gambling Activities occurred and are occurring in trade or commerce under RCW 19.86.010, as constituting the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington.

5.6    Kalshi's provision, marketing, and advertising of Illegal Gambling Activities demonstrate a pattern of conduct committed in the course of its business and of which there is a real and substantial potential for repetition, impacting the public interest.

COMPLAINT FOR INJUNCTIVE
AND OTHER RELIEF - 17

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## VI.   SECOND CAUSE OF ACTION
### (Recovery of Money Lost at Gambling Act, RCW 4.24.070)

6.1   Plaintiff incorporates each of the foregoing paragraphs herein as if set forth in their entirety.

6.2   The Recovery of Money Lost at Gambling Act provides that "[a]ll persons losing money or anything of value at or on any illegal gambling games shall have a cause of action to recover from the dealer or player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost." RCW 4.24.070.

6.3   Pursuant to RCW 43.10.030(1), the Attorney General has discretionary authority to act in any court in matters of public concern provided there is a cognizable common law or statutory cause of action, such as RCW 4.24.070. *State v. City of Sunnyside*, 3 Wn.3d 279, 304, 550 P.3d 31 (2024); *see, e.g.*, *State v. Gattavara*, 182 Wn. 325, 329, 47 P.2d 18 (1935) (the Attorney General may "in the absence of express legislative restriction to the contrary, exercise all such power and authority as the public interest may, from time to time, require."); *City of Seattle v. McKenna*, 172 Wn.2d 551, 562, 259 P.3d 1087 (2011); *State v. Taylor*, 58 Wn.2d 252, 257, 362 P.2d 247 (1961); *Reiter v. Wallgren*, 28 Wn.2d 872, 880, 184 P.2d 571 (1947) ("It has always been a paramount duty of the attorney general to protect the interests of the people of the state.").

6.4   Illegal gambling and the recovery of money lost at gambling is a matter of public concern. RCW 9.46.010; *Rousso*, 170 Wn.2d at 82; *see also O'Neil v. Crampton*, 18 Wn.2d 579, 583-84, 140 P.2d 308 (1943) (holding basis for RMLGA is not only protection of the individual but "also a protection to the public, which is even more important").

6.5   Defendant Kalshi operates, develops, manages, finances, and/or profits from Illegal Gambling Activities in Washington, and continues to engage in these activities, including, among other things, unlicensed online sports wagering.

COMPLAINT FOR INJUNCTIVE
AND OTHER RELIEF - 18

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

6.6     Kalshi engaged and continues to engage in professional gambling, including by engaging in bookmaking, in violation of Washington law. RCW 9.46.220-.222; RCW 9.46.0269(d).

6.7     Kalshi has engaged and continues to engage in online gambling activity in violation of Washington law. RCW 9.46.240.

6.8     Kalshi has engaged and continues to engage in unlicensed online sports wagering in violation of Washington law. RCW 9.46.240; RCW 9.46.0368.

6.9     Kalshi has used and continues to use gambling records as part of its business in violation of Washington law. RCW 9.46.217; RCW 9.46.0253.

6.10    Kalshi owns, develops, and operates a website and apps that are unlicensed gambling devices in violation of Washington law, and continues to do so. RCW 9.46.215; RCW 9.46.0241(3), (4).

6.11    Kalshi has conducted, managed, directed, and/or profited from unlicensed gambling activities in violation of Washington law, and continues to do so. RCW 9.46.180; RCW 9.46.228.

6.12    Defendant Kalshi has offered and continues to offer gambling on its platform in violation of Washington's gambling laws and/or regulations.

6.13    The Attorney General is entitled to recover all money Washingtonians have lost through Defendant Kalshi's illegal gambling operation.

## VII.    REQUEST FOR RELIEF

Wherefore, the Plaintiff requests the following relief:

7.1     That the Court adjudge and decree that the Defendant has engaged in the conduct complained of herein.

7.2     That the Court adjudge and decree that Defendant's operation of gambling activities, as described above, violates Washington's Gambling Act, RCW 9.46.

7.3     That the Court adjudge and decree that Defendant's conduct complained of herein constitutes unfair or deceptive acts or practices and is unlawful in violation of the Consumer Protection Act (CPA), RCW 19.86.

COMPLAINT FOR INJUNCTIVE
AND OTHER RELIEF - 19

7.4     That the Court issue a permanent injunction pursuant to the CPA, RCW 19.86.080, enjoining and restraining Defendant and its representatives, successors, assigns, offices, agents, servants, employees, and all other persons acting or claiming to act for, on behalf of, or in concert or participation with Defendant, from continuing or resuming the unlawful conduct complained of herein.

7.5     That the Court make such other orders pursuant to RCW 19.86.080 as it deems appropriate to provide for restitution to consumers of money or property unlawfully acquired by Defendant as a result of the conduct complained of herein.

7.6     That the Court, as an equitable remedy, disgorge Defendant of money or property acquired by Defendant as a result of the conduct and violations complained of herein.

7.7     That the Court assess civil penalties, pursuant to RCW 19.86.140, against Defendant for each and every violation of the CPA.

7.8     That the Court order Defendant to provide an accounting of the names and contact information of each Washington consumer from whom Defendant collected monies, and to whom Defendant remitted monies, and the amount of monies received from and remitted to each such consumer.

7.9     That the Court make such orders as necessary to recover all money Washingtonians have lost at illegal gambling and/or activities through Defendant pursuant to Washington's Recovery of Money Lost at Gambling Act, RCW 4.24.070.

7.10    That the Court make such orders pursuant to RCW 19.86.080 to provide that the Plaintiff, State of Washington, have and recover from Defendant the costs of this action, including reasonable attorneys' fees.

7.11    That the Court award pre- and post-judgment interest, at the maximum allowable rate provided by law.

7.12    For such other relief as the Court may deem just and proper.

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

DATED this 27th day of March, 2026.

NICHOLAS W. BROWN
Attorney General

_s/Andrea Alegrett_
ANDREA ALEGRETT, WSBA No. 50236
JULIA K. DOYLE, WSBA No. 43993
BEN J. BRYSACZ, WSBA No. 54683
MATTHEW GEYMAN, WSBA No. 17544
SEANN COLGAN, WSBA No. 38769
Assistant Attorneys General
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
andrea.alegrett@atg.wa.gov
julie.doyle@atg.wa.gov
ben.brysacz@atg.wa.gov
matt.geyman@atg.wa.gov
seann.colgan@atg.wa.gov
_Attorneys for Plaintiff State of Washington_

COMPLAINT FOR INJUNCTIVE
AND OTHER RELIEF - 21

# Exhibit 2

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

STATE OF WASHINGTON,

    Plaintiff,

v.

KALSHIEX LLC,

    Defendant.

No. 26-2-10264-3 SEA

NOTICE TO SUPERIOR COURT OF FILING OF AMENDED NOTICE OF REMOVAL

[Clerk's Action Required]

TO:    Clerk of the Court; and

TO:    All Parties and Counsel of Record

PLEASE TAKE NOTICE that the above-titled action has been removed by Defendant KalshiEX LLC to the United States District Court for the Western District of Washington at Seattle, pursuant to 28 U.S.C. § 1446.

PLEASE TAKE FURTHER NOTICE that attached hereto is a true and correct copy of the Amended Notice of Removal.  The original Amended Notice of Removal has been filed with the aforementioned United States District Court.

///

///

///

NOTICE TO SUPERIOR COURT OF FILING
OF NOTICE OF REMOVAL - 1

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

DATED this 30th day of March, 2026.

CORR CRONIN LLP


_s/ Steven W. Fogg_
Steven W. Fogg, WSBA No. 23528
1015 Second Avenue, Floor 10
Seattle, WA  98104-1001
Ph: (206) 625-8600
sfogg@corrcronin.com

MILBANK LLP

NEAL KUMAR KATYAL (_Pro hac vice_ forthcoming)
JOSHUA B. STERLING (_Pro hac vice_ forthcoming)
WILLIAM E. HAVEMANN (_Pro hac vice_ forthcoming)
GRANT R. MAINLAND (_Pro hac vice_ forthcoming)
ANDREW L. PORTER (_Pro hac vice_ forthcoming)

_Attorneys for Defendant KalshiEX LLC_

NOTICE TO SUPERIOR COURT OF FILING
OF NOTICE OF REMOVAL - 2

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## CERTIFICATE OF SERVICE

The undersigned certifies as follows:  I am employed at Corr Cronin LLP. On the date below, I caused a true and correct copy of the foregoing document to be served via the King County Superior Court Efiling portal, pursuant to LGR 30, on:

| **Attorneys for Plaintiff:** |
| --- |
| ANDREA ALEGRETT, WSBA No. 50236<br>JULIA K. DOYLE, WSBA No. 43993<br>BEN J. BRYSACZ, WSBA No. 54683<br>MATTHEW GEYMAN, WSBA No. 17544<br>SEANN COLGAN, WSBA No. 38769<br>Assistant Attorneys General<br>Consumer Protection Division<br>800 Fifth Avenue, Suite 2000<br>Seattle, WA 98104-3188<br>206-464-7744<br>andrea.alegrett@atg.wa.gov<br>julie.doyle@atg.wa.gov<br>ben.brysacz@atg.wa.gov<br>matt.geyman@atg.wa.gov<br>seann.colgan@atg.wa.gov<br><br>*Attorneys for Plaintiff State of Washington* |

DATED at Seattle, Washington on the 30th day of March, 2026.

*s/ Tammy Weisser*
Tammy Weisser, Legal Assistant
Corr Cronin LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104
Phone: (206) 625-8600
Email: tweisser@corrcronin.com

NOTICE TO SUPERIOR COURT OF FILING
OF NOTICE OF REMOVAL - 3