Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON,

        Plaintiff,

v.

KALSHIEX LLC,

        Defendant.

Case No. 2:26-cv-01062-JCC

DEFENDANT KALSHIEX LLC's
OPPOSITION TO PLAINTIFF'S
MOTION TO REMAND

**PRELIMINARY STATEMENT**

Remand is not appropriate here.  Through this action, Plaintiff seeks to use state gaming laws to ban KalshiEX LLC ("Kalshi") from offering event contracts in Washington on its designated contract market ("DCM") registered with the Commodity Futures Trading Commission ("CFTC").  While Plaintiff seeks to portray this suit as a garden-variety state claim, it is not. Plaintiff seeks to stop trading of federally regulated derivatives on a federally regulated exchange. As the Third Circuit and several district courts have recently found, Kalshi's event contracts are subject to the Commodity Exchange Act ("CEA") and exclusive oversight by the CFTC. *KalshiEX, LLC v. Flaherty*, — F.4th —, 2026 WL 924004, at *2-3 (3d Cir. Apr. 6, 2026).  The United States and CFTC have also underscored the federal interests at stake by filing suit in federal courts in Arizona, Connecticut, Illinois, and New York to enjoin those states from enforcing state

gambling laws against CFTC-regulated DCMs. *See infra* Section II.B. This action must be adjudicated in federal court for several independent reasons.

*First*, Plaintiff's claims necessarily raise disputed and substantial issues of federal law that are fully and appropriately capable of resolution in this court. *Gunn v. Minton*, 568 U.S. 251, 258 (2013). To prove its state-law claims, Plaintiff must show that event contracts traded on Kalshi were "illegal gambling" and not "bona fide business transactions" involving commodities. Wash. Rev. Code § 9.46.0237. But Kalshi's event contracts qualify as bona fide business transactions because they are federally regulated swap transactions traded on a federally regulated exchange. Plaintiff tries to downplay unavoidable federal issues by claiming that there is no federal claim on the face of the complaint, but that argument conflicts with Supreme Court precedent and another decision that has considered the same embedded federal issue presented here. *Georgia Gambling Recovery LLC v. Kalshi Inc.*, 2026 WL 279375, at *3 (M.D. Ga. Feb. 3, 2026).

*Second*, removal is proper pursuant to 28 U.S.C. § 1442(a)(2) because KalshiEX's designation as a DCM under the CEA constitutes property derived from the CFTC, and Plaintiff's action directly affects the validity of the CEA. Plaintiff's action, if successful, would: (i) create an obstacle to the accomplishment of Congress's objectives as set forth in the CEA; (ii) pose a "fundamental threat" to the CFTC's exclusive jurisdiction under the CEA; (iii) risk creating a patchwork of state regulation that the CEA is designed to avoid; and (iv) risk invalidating the definition of "swap" in the CEA. These effects would frustrate and fundamentally affect the validity of the CEA.

*Finally*, Plaintiff should not be allowed to avoid removal by failing to name the CFTC as a party. Plaintiff was required to do so under Wash. Super. Ct. Civ. R. 19 ("CR 19"), because the CFTC has a substantial interest that is implicated by this case. In fact, as the CFTC has recently explained in several federal court actions against states, the issues presented here directly implicate

its exclusive jurisdiction to permit trading of event contracts on DCMs. *See infra* Section II.B. Had Plaintiff named the CFTC, there would be no reasonable dispute that this action is removable under 28 U.S.C. § 1442(a)(1). Plaintiff cannot "conceal the true nature of" its "complaint through 'artful pleading.'" *Bright v. Bechtel Petrol., Inc.*, 780 F.2d 766, 769 (9th Cir. 1986) (citation omitted).

For these reasons, as outlined below, Plaintiff's motion should be denied.

<b><u>BACKGROUND</u></b>

**A.      Federal Regulation of Event Contracts Under the Commodity Exchange Act**

In 1974, Congress established the CFTC to oversee and regulate exchanges under the CEA. Proponents of this Congressional action were concerned "that the states . . . might step in to regulate the futures markets themselves," subjecting futures exchanges to "conflicting regulatory demands." *Am. Agric. Movement, Inc. v. Bd. of Trade of Chi.*, 977 F.2d 1147, 1156 (7th Cir. 1992). One Senator remarked that "different State laws would just lead to total chaos." *Commodity Futures Trading Commission Act: Hearings Before the S. Comm. on Agric. & Forestry on S. 2485, S. 2578, S. 2837, and H.R. 13113*, 93d Cong., 2d Sess. 685 (1974) (statement of Sen. Clark). As a solution, the House Committee on Agriculture put "all exchanges and all persons in the industry under the same set of rules and regulations for the protection of all concerned." H.R. Rep. No. 93-975, at 76, 82 (1974). Congress accordingly granted the CFTC "exclusive jurisdiction" over transactions occurring on CFTC-designated contract markets. *See* 7 U.S.C. § 2(a)(1)(A).

The CFTC regulates derivatives that reference physical commodities like "wheat, cotton, rice, corn, [and] oats," 7 U.S.C. § 1a(9), as well as those referencing intangible "excluded commodit[ies]" like interest rates, other financial instruments, economic indices, risk metrics, and—as particularly relevant here—events, which the CEA defines as any "occurrence, extent of an occurrence, or contingency" that is "beyond the control of the parties to the relevant contract" and "associated with" economic consequences. *Id.* § 1a(19)(iv); *see id.* § 1a(9).

In 2010, Congress amended the CEA to add "swaps" to the CFTC's exclusive jurisdiction and to define event contracts as a type of swap. *See id.* §§ 1a(47)(A)(ii), (iv), (vi); *KalshiEX LLC v. CFTC*, 2024 WL 4164694, at *2-3 (D.D.C. Sep. 12, 2024). "Event contracts" are "agreements, contracts, transactions, or swaps in excluded commodities." 7 U.S.C. § 7a-2(c)(5)(C)(i). The CFTC has recognized that "event contracts," including contracts tied to "the outcome of particular entertainment events," "can be designed to exhibit the attributes of either options or futures contracts." Concept Release, 73 Fed. Reg. 25,669, 25,669-70 (May 7, 2008). An "occurrence"-based futures contract or option results in a payment based on a specified occurrence or extent of an occurrence—for example, the occurrence or severity of a hurricane or a sporting event.

### B.    Kalshi is a Federally Regulated DCM

In 2020, the CFTC designated Kalshi as a DCM. *See* CFTC, *Order of Designation, In the Matter of the Application of KalshiEX LLC for Designation as a Contract Market*, at 2 (Nov. 3, 2020) ("Order of Designation"), https://perma.cc/3JW5-6QA6.

Since then, Kalshi has been federally regulated. Federal law requires Kalshi to comply with a host of federal requirements designed to ensure market integrity. An exchange's status as a DCM "imposes upon it a duty of self-regulation, subject to the Commission's oversight," requiring the exchange to "enact and enforce rules to ensure fair and orderly trading, including rules designed to prevent price manipulation, cornering and other market disturbances." *Am. Agric. Movement*, 977 F.2d at 1150-51. Kalshi offers many kinds of event contracts related to climate, technology, popular culture, economics, politics, and sports. The latter two have attracted significant regulatory attention.

In January 2025, Kalshi began offering sports event contracts after certifying in submissions to the CFTC that the contracts complied with the CEA. *See* 7 U.S.C. § 7a-2(c)(1); *see also* 17 C.F.R. § 40.2(a)(3)(iv). Earlier this year, the CFTC issued two significant pronouncements regarding prediction markets. *First*, the CFTC published guidance supporting

lawful innovation in prediction markets, including sports event contracts. Prediction Markets Advisory, CFTC Letter No. 26-08 (Mar. 12, 2026). *Second*, the CFTC published an Advanced Notice of Proposed Rulemaking, seeking public comment on a range of issues in this space, including the types of event contracts that may be prohibited as contrary to the public interest, applicable Core Principles, and other topics. Prediction Markets, 91 Fed. Reg. 12,516 (proposed Mar. 16, 2026). As these developments demonstrate, the CFTC is actively exercising its regulatory authority over the markets at issue in this proceeding.

### C.   This Litigation and Related Federal Court Actions

On March 27, 2026, the Washington Attorney General's Office ("Plaintiff" or the "State") filed a Complaint against Kalshi in King County Superior Court, referring to Kalshi's CFTC-registered DCM as a "gambling operation" and alleging that event contracts traded on Kalshi's federally regulated DCM violated Washington's prohibitions on gambling.[1] Compl. ¶¶ 6.5-6.13. Specifically, Plaintiff alleged violations of the Consumer Protection Act, Wash. Rev. Code § 19.86 ("CPA"), the Washington Gambling Act, Wash. Rev. Code § 9.46, and the Recovery of Money Lost at Gambling Act, Wash. Rev. Code § 4.24.070 ("RMLGA"). Compl. ¶ 2.1. Kalshi timely removed this action to federal court, asserting that removal was proper under 28 U.S.C. §§ 1331, 1441, and 1442.

The Complaint raises substantial questions of federal law that Kalshi has been actively litigating in federal courts across the country. Earlier this month, the Third Circuit affirmed a preliminary injunction order barring New Jersey from enforcing state gambling laws against Kalshi. In doing so, the court held that the CEA "preempts state gambling laws that seek to regulate futures trading, *i.e.*, Kalshi's sports-related event contracts traded on a DCM under the

---

[1] Plaintiff's broad allegations would sweep in not only sports event contracts, but also contracts on weather, physical commodity prices, and economic metrics. *See, e.g., Rain in Seattle this month?*, Kalshi, https://kalshi.com/markets/kxrainseam/rain-seattle/kxrainseam-26apr (last visited Apr. 27, 2026); *How high will oil (WTI) get by end of year?*, Kalshi, https://kalshi.com/markets/kxwtimax/wti-oil-yearly-high/kxwtimax-26dec31 (last visited Apr. 27, 2026); *US housing starts for March 2026*, Kalshi, https://kalshi.com/markets/kxhousingstart/monthly-housing-starts/kxhousingstart-26apr17 (last visited Apr. 27, 2026).

DEFENDANT KALSHIEX LLC's OPPOSITION
TO PLAINTIFF'S MOTION TO REMAND - 5

CORR CRONIN LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001

exclusive jurisdiction of the CFTC." *Flaherty*, 2026 WL 924004, at *5. Appeals relating to similar issues are pending in the Fourth, Sixth, and Ninth Circuits. *See KalshiEX LLC v. Martin*, No. 25-1892 (4th Cir.); *KalshiEX LLC v. Schuler*, No. 26-3196 (6th Cir.); *KalshiEX, LLC v. Assad*, No. 25-7516 (9th Cir.); *see also* Order at 1, *KalshiEX LLC v. Schuler*, No. 26-3196 (6th Cir. Apr. 24, 2026), Dkt. No. 26-2 (noting that "Kalshi has raised serious questions on the merits" and "courts have reached conflicting conclusions;" denying Kalshi's request for relief "[a]t this early stage").

Earlier this month, the United States and the CFTC jointly filed suit against Arizona, Connecticut, and Illinois to enjoin the application of those states' anti-gambling laws "to commodity derivatives markets and swaps traded on DCMs." *See* Compl. ¶ 12, *United States v. Arizona*, No. 2:26-cv-02246 (D. Ariz. Apr. 2, 2026) ("Ariz. CFTC Compl."); *see also* Compl., *United States v. Connecticut*, No. 3:26-cv-498 (D. Conn. Apr. 2, 2026), Dkt. No. 1; and Compl., *United States v. Illinois*, No. 1:26-cv-3659 (N.D. Ill. Apr. 2, 2026), Dkt. No. 1 (collectively, the "CFTC Complaints"). On April 10, 2026, the federal district court in Arizona granted the CFTC a TRO barring state enforcement of materially identical gambling laws, finding that enforcement "violates the Supremacy Clause . . . due to the CFTC's exclusive jurisdiction over DCMs." *KalshiEX LLC v. Johnson*, — F. Supp. 3d —, 2026 WL 976055, at *2 (D. Ariz. Apr. 10, 2026). On April 24, 2026, the United States and CFTC also sued the Governor of New York, Attorney General of New York, and other officials based on New York's attempt to enforce state gambling laws against DCMs and entities associated with them. Compl., *United States v. New York*, No. 1:26-cv-3404 (S.D.N.Y. Apr. 24, 2026), Dkt. No. 1.

The CFTC's position is unequivocal: State enforcement of gambling laws against trading that occurs on CFTC-regulated DCMs is an "attempt[ ] to subvert federal law and the exclusive jurisdiction to regulate event contract swaps conferred on the CFTC by Congress." Mot. for Prelim. Inj. at 10, *KalshiEX LLC v. Johnson*, No. 2:26-cv-1715 (D. Ariz. Apr. 8, 2026) ("CFTC TRO Br."). Even before the CFTC filed suit, it had taken the position publicly, including in an

amicus brief to the Ninth Circuit, that the application of state gambling laws to DCMs runs roughshod over its exclusive jurisdiction to regulate those entities. CFTC Amicus Br. at 2, *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Feb. 17, 2026), Dkt. No. 38.2 ("CFTC Amicus Br.").

## I.   THE COURT HAS FEDERAL QUESTION JURISDICTION

This Court has federal question jurisdiction under 28 U.S.C. § 1331, because Plaintiff's state-law claims necessarily raise and "implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). State-law claims give rise to federal question jurisdiction where a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting" the congressionally-approved balance of "federal and state judicial responsibilities." *Gunn*, 568 U.S. at 258 (citation modified). All four elements are satisfied here.

### A.   Federal Law Is Necessarily Raised by Plaintiff's Claims

A federal law issue is "necessarily" raised when "the vindication of [the plaintiff's] right[s] under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citation omitted); *see also Hornish v. King County*, 899 F.3d 680, 688 (9th Cir. 2018). A court looks to the "elements" of the plaintiff's claim and asks whether any element requires the plaintiff to apply federal law to the "facts of [its] case" in order "[t]o prevail." *Gunn*, 568 U.S. at 259. Despite repeatedly invoking the well-pleaded complaint rule, Plaintiff's motion does little to analyze the statutes underlying its claims. Those statutes confirm that federal questions are necessarily raised here.

As noted, Plaintiff seeks to stop Kalshi from offering event contracts by asserting claims under Washington's RMLGA and CPA. To obtain relief through those state-law claims, Plaintiff must establish that Kalshi's event contracts are (i) "illegal gambling," Wash. Rev. Code § 4.24.070, and (ii) not "bona fide business transactions" involving "contracts for the purchase or

sale at a future date of . . . commodities," Wash. Rev. Code § 9.46.0237.  *See also Wilson v. PTT, LLC*, 351 F. Supp. 3d 1325, 1339 (W.D. Wash. 2018).  Plaintiff necessarily must contend with federal law because Kalshi is a CFTC-registered DCM offering event contracts pursuant to the CEA.  The CEA grants the CFTC "exclusive jurisdiction" over "transactions involving swaps or contracts of sale of a commodity for future delivery" on designated exchanges, which include event contracts.  7 U.S.C. §§ 1a(19)(iv), 1a(47)(A)(ii), 2(a)(1)(A); *Flaherty*, 2026 WL 924004, at *2, *4.  And Kalshi is registered as a DCM with the CFTC in compliance with federal law.  Thus, federal law allows Kalshi to list event contracts for trading unless the CFTC specifically prohibits them, which the CFTC has chosen not to do here.

A federal court in Georgia recently found a clear federal question in private litigation involving Kalshi and other prediction market participants.  It denied a motion to remand that pressed many of the same arguments Plaintiff presses here.  *See Georgia Gambling Recovery*, 2026 WL 279375, at *3.  The state statute in that case permitted recovery for gambling that was "unlawful under the law governing its validity."  *Id.*  Even though the state statute made no reference to federal law, federal law was necessarily raised because Plaintiff was required to address "whether the challenged event contracts" were "unlawful gambling contracts," which could not "be determined by reference to Georgia law alone."  *Id.*  Ultimately, the Court held that "Plaintiff's ability to sustain a claim upon which relief may be granted necessarily depend[ed] on the interpretation and application of the CEA and the scope of the CFTC's exclusive jurisdiction."  *Id.*

Plaintiff's arguments to the contrary were rejected by *Georgia Gambling Recovery* and are otherwise without merit.  Plaintiff argues (at 8-10) that remand should be granted because preemption is an affirmative defense.  But Kalshi's argument for removal is not based on preemption.  Instead, Washington's gaming laws do not apply, by their *own* terms, to transactions on Kalshi, because these laws only reach "illegal gambling" activities.  *Georgia Gambling*

*Recovery*, 2026 WL 279375, at *2-3.  That distinguishes this case from the cases on which Plaintiff relies, none of which involved factual circumstances that turned critically on federal law.  *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 785-786 (9th Cir. 2018) (virtual casino offering electronic casino games including blackjack, poker, and slots); *Larsen v. PTT, LLC*, 737 F. Supp. 3d 1076, 1085 (W.D. Wash. 2024) (virtual slot machines); *Internet Cmty. & Ent. Corp. v. Wash. State Gambling Comm'n*, 238 P.3d 1163, 1164 (Wash. 2010) (betting website).

Plaintiff also argues (at 9-10) that Washington's definition of "gambling" does not raise a federal issue because "commodity" is defined in Washington's Commodity Transactions Act.  But that statute expressly refers to federal law, stating that it does not apply to "[a] person who is a member of a contract market designated by the commodity futures trading commission," *e.g.*, a DCM like Kalshi.  Wash. Rev. Code § 21.30.030(3).  This squarely applies to Kalshi, which is a CFTC-registered DCM.  Plaintiff's reliance on Washington's Commodity Act, which itself points to federal law, only underscores why a federal issue is necessarily raised here.

Finally, Plaintiff argues (at 1-2) that remand is proper here, relying on orders granted in Massachusetts, Nevada, Kentucky, and Ohio.  Each of those decisions is inapposite and incorrect on its own terms.  The Massachusetts order considered only complete preemption, not *Grable*, and did not issue an opinion.  *See* Electronic Order, *Commonwealth v. KalshiEX LLC*, No. 1:25-cv-12595-RGS (D. Mass. Oct. 28, 2025), Dkt. No. 34.  The Nevada order addressed a different statutory scheme, was wrongly decided for the reasons discussed throughout this memorandum, and is currently on appeal.  The Kentucky and Ohio orders relied on aspects of those states' Statutes of Anne and state-specific interpretation of those laws that are inapplicable here.  *See Kentucky Gambling Recovery LLC v. Kalshi Inc.*, 2026 WL 596107 (E.D. Ky. Mar. 3, 2026); *Ohio Gambling Recovery, LLC v. Kalshi Inc.*, 2026 WL 865788 (N.D. Ohio Mar. 30, 2026).  Those decisions were also issued before the CFTC sued several states to enjoin application of state gaming laws to DCMs, which is important to the *Grable* analysis.  *See Kentucky Gambling Recovery*, 2026 WL

596107, at *6 (finding that "the federal government does not find [the legality of sports event contracts under the CEA] particularly important" for purposes of its *Grable* analysis four weeks before the CFTC filed complaints against Arizona, Connecticut, and Illinois).

The far better authority on these issues is *Georgia Gambling Recovery*, which denied remand on *Grable* grounds in similar circumstances. 2026 WL 279375 at *3 (M.D. Ga. Feb. 3, 2026). The Georgia court also observed that "Plaintiff's claim could conflict with the action of a federal agency, which has an interest in a federal forum adjudicating that federal agency's authority under federal law." *Id*. This concern applies with equal force in Washington. Permitting state gambling laws to prohibit contracts that a federal agency has expressly authorized would directly undermine the CFTC's regulatory authority.

**B**.    **The Other *Grable* Factors Support Keeping This Case in Federal Court**

Whether Kalshi's event contracts violate state gambling laws or are authorized by federal law is "actually disputed." *Gunn*, 568 U.S. at 258. This issue is "far from 'trivial'" and "raise[s] vitally important questions that implicate the federal regulatory scheme" for futures trading.[2] *Michigan v. Enbridge Energy, Ltd. P'ship*, 571 F. Supp. 3d 851, 860 (W.D. Mich. 2021) (citation omitted). Given the CFTC's "exclusive jurisdiction" over swaps traded on a DCM, this case "will necessitate examining the scope of the federal government's constitutional and statutory authority over" trading event contracts on DCMs. *Id*. The "federal issues embedded in" Plaintiff's claims "are indeed substantial" because of their "clear 'importance . . . to the federal system as a whole.'" *Id*. at 860-861 (citation omitted).

---

[2] Plaintiff argues (at 12 n.1) that UIGEA and the CEA have savings clauses that preserved application of state laws. Plaintiff omits, however, that UIGEA's definition of "bet or wager" does not include "any transaction conducted on or subject to the rules of a registered entity . . . under the [CEA]," 31 U.S.C. § 5362(1)(E)(ii), which underscores that UIGEA did not contemplate state gambling laws being applied to DCMs. The CEA's savings clause is likewise expressly subject to the CFTC's grant of "exclusive jurisdiction" over trading on DCMs, 7 U.S.C. § 2(a)(1)(A), and preserves state authority only over off-DCM activity; reading it otherwise would swallow the exclusive-jurisdiction grant entirely.

Were Plaintiff to prevail, Kalshi's conduct would be simultaneously lawful—under federal law, which permits event contracts on Kalshi's DCM in all 50 states—and unlawful under Washington's gambling laws. That irreconcilable conflict underscores the substantiality of the federal question. The CFTC itself has recognized the import of this issue by filing amicus briefs asserting its "substantial interest" in the outcome. CFTC Mot. to File Amicus Br. at 1, *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Feb. 5, 2026), Dkt. No. 30.1 ("CFTC Mot."). The United States and CFTC have since filed affirmative lawsuits in Arizona, Connecticut, Illinois, and New York seeking declarations that state gambling laws, as applied to CFTC-designated contract markets, violate the Supremacy Clause—and have obtained emergency TRO relief in Arizona. These cases underscore the government's "direct interest in the availability of a federal forum to vindicate its own administrative action." *Grable*, 545 U.S. at 315.

The significance of the federal question is underscored by the breadth of related litigation. Federal courts in at least six districts have addressed these matters and reached competing outcomes. The Third Circuit has issued a precedential opinion affirming the grant of a preliminary injunction for Kalshi, concluding that Kalshi demonstrated a reasonable likelihood of success in showing that the CEA "preempts otherwise applicable state laws that purport to regulate sports-related event contracts on CFTC-licensed DCMs." *Flaherty*, 2026 WL 924004, at *4. Additional appeals are pending in the Fourth, Sixth, and Ninth Circuits. And the District of Arizona granted the CFTC relief barring Arizona from enforcing materially identical gambling laws. These conflicting and rapidly developing views confirm the federal issue is "actually disputed" and "substantial." *See Gunn*, 568 U.S. at 258.

Because these are substantial questions regarding the balance between federal and state law and the proper interpretation of a federal statutory scheme, they are appropriately resolved by a federal court. *See Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1185 (9th Cir. 2022) (finding the "federal-state balance approved by Congress" is not disrupted where "Congress

intended the *federal government* to have comprehensive control" over the projects (citation modified)).  Removal best ensures that a federal question will be adjudicated in the forum best positioned to resolve it.  It is undisputed that Kalshi is a federally registered DCM regulated by the CFTC pursuant to the CEA.  More than 50 years ago, Congress tasked the CFTC with exclusive responsibility for regulating trading on DCMs, *see Leist v. Simplot*, 638 F.2d 283, 322 (2d Cir. 1980) (Friendly, J.), *aff'd sub nom. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353 (1982), and courts have uniformly recognized that exclusivity since, *see Am. Agric. Movement*, 977 F.2d at 1156-57.  Exercising federal jurisdiction to address competing claims over trading on a DCM preserves the "congressionally approved balance of federal and state" judicial responsibilities.  *See United States v. City of Loveland*, 621 F.3d 465, 472 (6th Cir. 2010) (citation omitted).  The CFTC has a "direct interest" in a federal forum, and resolution of these issues "sensibly belongs in a federal court."  *Grable*, 545 U.S. at 315.

## II.     REMOVAL IS PROPER PURSUANT TO 28 U.S.C. § 1442

As the Supreme Court held earlier this month, the federal officer removal statute is meant to protect the federal government and private parties acting thereunder from state-court interference with their operations.  *See Chevron USA, Inc. v. Plaquemines Parish, La.*, 608 U.S. —, 2026 WL 1040461, at *3 (Apr. 17, 2026).  The Court reaffirmed that the statute should be read broadly, rejecting narrowing constructions that "would leave the [statutory] requirement with little, if any, independent function."  *Id.* at *8.  Here, the State's enforcement action conflicts with the actions taken by a federal agency.  The CFTC has claimed a "substantial interest" in the "scope of its exclusive jurisdiction," CFTC Mot. at 1, and has initiated litigation against four states that, like Washington, are attempting to curtail its jurisdiction by enforcing preempted state laws.  In these circumstances, removal under 28 U.S.C. § 1442 is proper for two reasons:  *First,* the State's enforcement action is directed at the holder of property (Kalshi's designation as a DCM), derived from the CFTC, and would affect the validity of the CEA; and *second*, the State attempts to artfully

plead around federal officer removal by excluding the CFTC, a necessary party, from this enforcement action.

### A.    Kalshi Is a Property Holder for Purposes of Federal Officer Jurisdiction Under 28 U.S.C. § 1442(a)(2)

Removal is proper pursuant to 28 U.S.C. § 1442(a)(2), which authorizes removal of a civil action directed against "[a] property holder whose title is derived from any . . . officer [of the United States or of any agency thereof], where such action . . . affects the validity of any law of the United States."  Both those elements are met here because Kalshi's designation as a contract market under the CEA constitutes property derived from the CFTC, and Washington's action directly affects the validity of the CEA.

Plaintiff labels (at 15) Kalshi's argument as "wholly novel."  But Section 1442(a)(2) has been on the books since 1948 in substantially its current form, and it traces its lineage to the 1833 Force Bill—the original mechanism Congress devised to protect federal officers from state-court interference with their operations.  *See Chevron*, 2026 WL 1040461, at *3.  The fact that it is "seldom-invoked" reflects the rarity of the precise scenario it was designed to address—a state action against a holder of property derived from a federal officer that "affects the validity" of federal law—not any limitation on its scope.  Mot. to Remand at 15.  More importantly, novelty of application is not a defense to removal.  The federal officer removal statute "must be 'liberally construed,' " and as outlined below, its application fits comfortably with the facts presented here.  *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007) (citing *Colorado v. Symes*, 286 U.S. 510, 517 (1932)); *Marathon Petrol. Co. LP v. Arkema, Inc.*, 2025 WL 2528353, at *4 (W.D. Wash. Sep. 3, 2025) (same).

### 1.    KalshiEX Is a Property Holder with Title Derived from the CFTC.

On November 3, 2020, the CFTC approved Kalshi's designation as a contract market pursuant to the CEA.  *See* Order of Designation at 2.  This designation made Kalshi a property

holder with title derived from a federal officer within the meaning of § 1442(a)(2).

Although "property" is not defined in § 1442(a)(2), property is generally understood to include "[a]ny external thing over which the rights of possession, use, and enjoyment are exercised" and "every kind of valuable right and interest that can be made the subject of ownership." *Property*, Black's Law Dictionary (12th ed. 2024); *see also Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003). A government license grants a property right if the right is (1) "capable of precise definition," (2) "capable of exclusive possession or control," and (3) owned by an entity that has "established a legitimate claim to exclusivity." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 903 (9th Cir. 1992). All three criteria are met here.

*First*, Kalshi's designation as a DCM creates a clearly defined property right: It enables Kalshi to operate a facility for the trading or processing of swaps. 7 U.S.C. § 7b-3(a)(1) ("No person may operate a facility for the trading or processing of swaps unless the facility is registered as a . . . [DCM] under this section."); *see also* 17 C.F.R. § 38.3 (setting forth requirements and procedures for registration as a DCM); Ariz. CFTC Compl. ¶ 32 ("The CEA requires that . . . commodity derivative transactions . . . be conducted on exchanges designated by, or registered with, the CFTC."); *Kalitta*, 958 F.2d at 903 ("nature and extent" of the rights afforded by a federal license were "capable of precise definition" where they provided a privilege to a limited group of recipients).

*Second*, Kalshi's designation as a DCM is capable of exclusive possession or control. The rights granted by Kalshi's designation are restricted to Kalshi unless transferred by the holder. *See* 7 U.S.C. § 7b-3(a)(1); 17 C.F.R. § 38.3(d)(1) (providing for "transfer of [a DCM's] designation from its current legal entity to a new legal entity"); *Kalitta*, 958 F.2d at 903 ("Nor are there any conceptual or practical difficulties in restricting the right to the holder of the [federal license], or to someone who is a transferee or licensee. In fact, the federal regulations contemplate exactly that. [The licensee's] interest is thus precisely defined and capable of exclusive possession.");

*Shackleford v. United States*, 262 F.3d 1028, 1032 (9th Cir. 2001) ("The right to transfer is one of the most essential sticks in the bundle of rights that are commonly characterized as property." (citation modified)).

*Finally*, Kalshi's designation certificate establishes that KalshiEX has a legitimate claim of exclusivity over its DCM designation. *See* 17 C.F.R. § 38.3(d)(1); *see also Title*, Black's Law Dictionary (12th ed. 2024) (defining "title" as "the legal link between a person who owns property and the property itself"); *Mfrs. & Traders Tr. Co. v. Fidelity Nat'l Title Ins. Co.*, 2012 WL 5462887, at *4 (D. Or. Nov. 4, 2012) (defining "title" as "the instrument constituting . . . evidence of the fullest legal right to control and dispose of property" (citation modified)).[3] KalshiEX's legitimate claim of exclusivity is further evidenced by its expenditure of "considerable time and effort" in complying with the CFTC's regulations and in preparing submissions to the CFTC for self-designation. *Kalitta*, 958 F.2d at 903.

Kalshi's designation as a DCM also comes with the procedural protections typical of property rights. The designation as a contract market cannot be suspended or revoked by the CFTC without cause and only after providing Kalshi notice, a hearing, and an opportunity to appeal to federal court. 7 U.S.C. § 7b ("The failure of a registered entity to comply with any provision of this chapter . . . **shall be cause** [for suspension or revocation] . . . ." (emphasis added)); 7 U.S.C. § 8(b) (describing process required before suspending or revoking a designation as a contract market). Those requirements reinforce that Kalshi has a property interest in its designation as a contract market. *See, e.g.*, *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164-65 (9th Cir. 2005); *Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir. 1980) ("A property interest may be created if 'procedural' requirements are intended to operate as a significant substantive restriction on the

---

[3] Plaintiff argues (at 16) that *Mfrs. & Traders Tr. Co.* held "title" must refer only to real property. Not so. The court was addressing a dispute involving real property but did not hold that title only refers to real property. Regardless, that case stands for the unremarkable proposition that "title" is broadly construed to include "the instrument constituting . . . evidence of the fullest legal right to control and dispose of property." 2012 WL 5462887, at *4 (citation modified). Kalshi's CFTC designation as a DCM constitutes precisely such an instrument—it evidences Kalshi's fullest legal right to operate a DCM and trade event contracts.

basis for an agency's actions." (citation omitted)).

Contrary to the State's argument (at 15-17), the term "property" in § 1442(a)(2) is not limited to real property. Plaintiff identifies a single out-of-circuit case suggesting that the statute's reference to "title" means property refers only to "real property." *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc.*, 809 F. Supp. 2d 524, 534 (E.D. La. 2011). But *St. Bernard* was focused on the fact that the defendant did not derive title to its property from a federal officer; instead, what it obtained was a *contractual right*. *Id.* at 534-535. Regardless, reading property narrowly conflicts with the plain language of the statute, the requirement that the federal officer statute be construed liberally, and case law in this District. For example, "property" includes "beneficial title" to tribal lands that was held in trust by the federal government (*i.e.*, a right to use land). *Carney v. Washington*, 551 F. Supp. 3d 1042, 1053 (W.D. Wash. 2021).

Plaintiff's position limiting "property" to real property is also irreconcilable with federal caselaw holding that intangible rights and entitlements with commercial value constitute "property." *See, e.g.*, *Pasquantino v. United States*, 544 U.S. 349, 355-356 (2005) (right to collect excise taxes constitutes "property" under federal wire fraud statute). Even if a license were deemed "a privilege so far as the relations between the licensee and the [licensor] are concerned," it is plainly "*property in any relationship between the licensee and third persons*, because the license has value and may be sold." *Kalitta*, 958 F.2d at 902 (citing *Roehm v. Orange County*, 196 P.2d 550, 552 (Cal. 1948) (en banc)).

**2.      Plaintiff's Action Affects the Validity of the CEA.**

The removal statute's purpose is to provide a layer of protection from local prejudice for those acting under federal authority so that the federal government can function. *Carney*, 551 F. Supp. 3d at 1053-54; *Dold-Apger v. Friends of San Pedro River, Inc.*, 2011 WL 8317910, at *2 (D. Ariz. Oct. 14, 2011); *see also id.* (the statute also "prevent[s] the state from impeding enforcement of federal laws; and assure[s] a forum for federal immunity defenses"). Thus, a

lawsuit affects the validity of a federal law where it "would evade . . . or otherwise frustrate [the law's] aims." *Carney*, 551 F. Supp. 3d at 1053-54. Plaintiff's lawsuit does exactly that in several ways.

*First*, allowing the State to apply its gambling laws against Kalshi would frustrate the CEA's aims and "directly conflict[ ] with the full purposes and objectives" of Congress. *Flaherty*, 2026 WL 924004, at *5; *see also* CFTC TRO Br. at 1. This is because the CEA provides for exclusive federal regulation of swap transactions on DCMs. *See* 7 U.S.C. § 2(a)(1)(A); *Flaherty*, 2026 WL 924004, at *5 ("Congress created the CFTC and amended the Act to do away with the patchwork of state regulations and bring futures trading on DCMs under the exclusive jurisdiction of the CFTC."). Enforcement of Washington's gambling laws "would create an obstacle to executing the [CEA] because such state enforcement would prohibit Kalshi, which operates a licensed DCM under the exclusive jurisdiction of the CFTC, from offering its . . . event contracts" in Washington. *Id.*

*Second*, Plaintiff's action would fundamentally frustrate the "exclusive jurisdiction" of the CFTC over DCMs. *See, e.g.*, Ariz. CFTC Compl. ¶ 12; *see also* CFTC TRO Br. at 6 ("This Court should enter a temporary restraining order and a preliminary injunction because Arizona gambling laws are preempted as applied to federally regulated DCMs listing swaps, and Arizona's aggressive enforcement of its preempted state laws . . . causes irreparable harm to the federal plaintiffs."); CFTC Amicus Br. at 2 (state enforcement actions constitute "fundamental threat to Congress's statutory design"). For over 50 years, Congress has occupied the field as to "the regulation of trading on a DCM." *Flaherty*, 2026 WL 924004, at *4. That comprehensive regulatory scheme "has left no room" for supplementary state regulation, such as Plaintiff seeks to do here. *Id.* (citation omitted).

*Third*, Plaintiff's action risks creating a patchwork of state regulation that the CEA is designed to avoid. Piecemeal state regulation of DCMs "is exactly the patchwork that Congress

replaced wholecloth by creating the CFTC." *Id.* at \*5. Plaintiff's action underscores why the CEA sought to avoid state-by-state regulations of DCMs. Compliance with state-specific prohibitions on event contracts would be "impossible" for DCMs because these prohibitions conflict with the "federal mandate to provide impartial national access." Ariz. CFTC Compl. ¶ 72; *see also* CFTC Amicus Br. at 26-27.

*Finally*, Plaintiff's action risks invalidating the definition of "swap" in the CEA. Kalshi's event contracts easily "fit within the [CEA]'s definition of 'swaps' subject to the CFTC's jurisdiction." *Flaherty*, 2026 WL 924004, at \*3; *see* CFTC Amicus Br. at 14-18 (explaining that event contracts are "swaps" under the "plain language" of the CEA). Because they are "swaps under the [CEA]," event contracts are "properly" regulated as "trading on a DCM (a form of futures trading) rather than as gambling (a broader and traditionally state-regulated field)." *Flaherty*, 2026 WL 924004, at \*4. The regulation of Kalshi's event contracts under state gambling laws would create "a clash between a constitutional exercise of Congress's legislative power and conflicting state law." *Id.* (citing *Murphy v. NCAA*, 584 U.S. 453, 479 (2018)).

Plaintiff argues (at 16-17) that mere "regulation" does not affect the "validity" of federal law. But the State is not merely "regulating" Kalshi—it is seeking to extinguish Kalshi's federal license to operate as a nationwide market within Washington. Plaintiff's complaint asks the state court to declare that every event contract Kalshi offers is "illegal gambling," to enjoin Kalshi from offering them, to disgorge proceeds, and to enjoin "all other persons acting . . . in concert" with Kalshi. Compl. ¶¶ 7.1-7.9. A state-court order declaring that Kalshi's federally authorized contracts are categorically unlawful within Washington is functionally indistinguishable from a state-court order revoking Kalshi's federal designation as applied to Washington—it strips Kalshi of the very right the CFTC's designation order conferred. Where the state action would render the federal grant inoperative within the state's borders, the action "affects the validity" of the federal law authorizing that grant.

The State's reliance on *Veneruso v. Mount Vernon Neighborhood Health Center*, 586 F. App'x 604 (2d Cir. 2014) is equally misplaced.  Unlike in that case, where the defendant's argument for removal was based on an "indirect result of the decision of the Regional Administrator for the Centers for Medicare & Medicaid Services" to approve its operations, *id.* at 608, Plaintiff's allegations concerning Kalshi's offering of event contracts place the validity of the CEA squarely at issue for all the reasons discussed above.  Regardless, removal under § 1442(a)(2) is "proper even if only a defense depends on federal law." *Carney*, 551 F. Supp. 3d at 1053 (citing *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999)).

**B.  Artful Pleading Cannot Defeat Federal Officer Removal Under 28 U.S.C. § 1442(a)(1)**

Plaintiff's "artful pleading" provides another basis for denying the remand motion.  *See Brennan v. Sw. Airlines Co.*, 134 F.3d 1405, 1409, 1412 (9th Cir. 1998) (affirming denial of remand motion based on "the artful pleading doctrine").  Joinder of the CFTC—a necessary party here—would create removal jurisdiction under 28 U.S.C. § 1442(a)(1).  The CFTC is plainly a "necessary party" under CR 19—it has "sovereign" interests that this litigation would invade and it has filed four affirmative suits and obtained TRO relief against materially identical state laws.  Plaintiff's strategic failure to join the CFTC in this action cannot allow it to defeat jurisdiction.  *Cf. Bright*, 780 F.2d at 769 ("A plaintiff will not be allowed to conceal the true nature of a complaint through 'artful pleading.'" (citation omitted)).

Plaintiff relies (at 14) on *Nevada ex rel. Nev. Gaming Control Bd. v. KalshiEX, LLC*, 2026 WL 579364 (D. Nev. Mar. 2, 2026), to argue that the CFTC is not a necessary party, pointing to a Nevada court's analysis of Nevada's joinder rules.  Nevada rules do not apply here.  The rule that does apply, CR 19, makes clear that the CFTC is a necessary party to this action.  CR 19(a) states that a person "shall be joined" if (1) "complete relief cannot be accorded among those already parties" in the person's absence or (2) "the person claims an interest relating to the subject of the

DEFENDANT KALSHIEX LLC's OPPOSITION
TO PLAINTIFF'S MOTION TO REMAND - 19

action" and disposition of the action without that person "may (A) as a practical matter impair or impede the person's ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the person's claimed interest."

Each of those bases for joinder applies here. *First*, joinder is required under CR 19(a)(1) because complete relief cannot be accorded among the parties without the CFTC's presence. Kalshi is subject to a federal mandate to provide "impartial national access" to its platform. CFTC TRO Br. at 18. In challenging state actions to regulate DCMs, the CFTC made clear that "state-imposed restrictions on access to markets" would "make it impossible for the regulated DCMs to comply with federal regulations." *Id*. Thus, relief cannot be adequately granted in the absence of the CFTC's participation concerning this issue. And Plaintiff has requested broad injunctive relief, including a request that the court enjoin "all other persons acting . . . in concert or participation with Defendant" from continuing or resuming the alleged conduct. Compl. ¶ 7.4. The challenged conduct is listing event contracts on a DCM, and based on the CFTC's active role in regulating event contracts, the CFTC is a necessary party.

*Second,* joinder is required under CR 19(a)(2). As an initial matter, there can be no serious dispute that the CFTC "claims an interest relating to the subject" of this action. The CFTC has now brought four lawsuits against states seeking to apply their gaming laws to regulate event contracts offered on DCMs. *See generally* CFTC Complaints. The CFTC has also filed an amicus brief reinforcing that it has exclusive jurisdiction over DCMs. *See generally* CFTC Amicus Br. The CFTC has made clear that it has "at least two legally protected 'sovereign injuries' " from states' attempts to apply gambling laws to CFTC-regulated derivatives markets: (1) the invasion of the CFTC's exclusive jurisdiction over DCMs, and (2) the undermining of federal regulatory uniformity that Congress intended to achieve through the CEA. CFTC TRO Br. at 6-8.

The failure to join the CFTC would "as a practical matter impair or impede" the CFTC's

"ability to protect that interest." CR 19(a)(2)(A). Plaintiff is seeking to fundamentally alter the CFTC's exclusive jurisdiction over DCMs but has strategically chosen not to name the CFTC as a party. Had Plaintiff done so, removal would also have been proper under 28 U.S.C. § 1442(a)(1). Plaintiff "may not defeat removal" through artful pleading. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983).

## III.    PLAINTIFF'S REQUEST FOR FEES AND COSTS SHOULD BE DENIED

Plaintiff's request for fees and costs is without merit. Attorney's fees are generally available only "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). When "an objectively reasonable basis exists, fees should be denied." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008) (citation omitted).

Kalshi's removal was objectively reasonable. *First*, as to *Grable*, one federal court has agreed with Kalshi's position that removal was proper where, as here, a plaintiff filed a claim in state court invoking state gambling statutes with an embedded question of federal law. *Second*, Kalshi has identified substantial precedent supporting its position that removal is proper under § 1442(a)(2), and Plaintiff has not identified any case addressing this issue that holds otherwise. Indeed, as to whether this action affects the validity of the CEA, the Third Circuit and other federal courts have highlighted how the application of state gambling laws to DCMs conflicts with the CFTC's exclusive jurisdiction over DCMs under the CEA. *See, e.g.*, *Flaherty*, 2026 WL 924004, at *1, *4. *Third*, by suing four states in federal court to enjoin the application of state gambling laws to DCMs, the CFTC has unequivocally taken the position that it has a substantial interest in the outcome of this action, which reinforces that it should have been named as a party to this action.

No reasonable argument can be made that removal was objectively unreasonable in this rapidly developing legal landscape. Plaintiff points out that some district courts have disagreed with Kalshi's removal arguments, but others have accepted them and denied remand in similar

circumstances.  Regardless, the Ninth Circuit has explained that fees are inappropriate where, as here, "no circuit court of appeals ha[s] rejected" the argument at issue.  *Lussier*, 518 F.3d at 1066.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand should be denied.

DATED this 27th day of April, 2026.

CORR CRONIN LLP

*/s/ Steven W. Fogg*
Steven W. Fogg, WSBA No. 23528
1015 Second Avenue, Floor 10
Seattle, WA  98104-1001
Ph: (206) 625-8600
sfogg@corrcronin.com

MILBANK LLP

NEAL KUMAR KATYAL (*Pro hac vice*)
JOSHUA B. STERLING (*Pro hac vice*)
WILLIAM E. HAVEMANN (*Pro hac vice*)
GRANT R. MAINLAND (*Pro hac vice*)
ANDREW L. PORTER (*Pro hac vice*)
NOLA B. HELLER (*Pro hac vice*)
MATTHEW J. LAROCHE (*Pro hac vice*)

*Attorneys for Defendant KalshiEX LLC*

*I certify that this memorandum contains 7,287 words, in compliance with the Local Civil Rules*

DEFENDANT KALSHIEX LLC's OPPOSITION
TO PLAINTIFF'S MOTION TO REMAND - 22

CORR CRONIN LLP
1015 Second Ave, Floor 10
Seattle, WA 98104-1001