The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON,

              Plaintiff,

   v.

KALSHIEX, LLC,

              Defendant.

NO. 2:26−cv−01062−JCC

PLAINTIFF STATE OF WASHINGTON'S REPLY IN SUPPORT OF ITS MOTION TO REMAND

NOTE ON MOTION CALENDAR:
Monday, May 4, 2026

[*King County Superior Court
No. 26-2-10264-3 SEA]*

## I.    REPLY

### A.    This Court Lacks Federal Question Jurisdiction

Federal question jurisdiction is governed by the "well-pleaded complaint rule," which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Kalshi seeks to bring this action within a "special and small category" of cases in which a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Dkt. 21 at 7-12.

Specifically, Kalshi asserts that the Washington state Gambling Act's definition of "gambling" requires application of federal law. Kalshi is wrong, first, because courts routinely

PLAINTIFF STATE OF WASHINGTON'S REPLY
IN SUPPORT OF ITS MOTION TO REMAND
NO. 2:26−cv−01062−JCC – 1

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

interpret provisions of the Gambling Act by exclusive refence to state law, and Kalshi identifies no authorities to the contrary. Second, the federal issue Kalshi identifies will only arise if Kalshi raises it as an affirmative defense, and potential defenses do not give rise to federal question jurisdiction. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). Finally, even if Washington's claims necessarily raised an issue of federal law, resolving that issue in federal court would disrupt the federal-state balance approved by Congress, which has left gambling regulation to the states for over a century.

**B.    Washington's State Law Claims Do Not Necessarily Raise an Issue of Federal Law**

Kalshi identifies only one aspect of Washington's claims that it asserts necessarily raises an issue of federal law—the Washington state Gambling Act's definition of "gambling":

> "Gambling," as used in this chapter, means staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome.

Wash. Rev. Code § 9.46.0237. Specifically, Kalshi relies upon one of several exceptions to the definition:

> *Gambling does not include* fishing derbies as defined by this chapter, parimutuel betting and handicapping contests as authorized by chapter 67.16 RCW, *bona fide business transactions valid under the law of contracts, including, but not limited to, contracts for the purchase or sale at a future date of securities or commodities*, and agreements to compensate for loss caused by the happening of chance, including, but not limited to, contracts of indemnity or guarantee and life, health, or accident insurance. In addition, a contest of chance which is specifically excluded from the definition of lottery under this chapter shall not constitute gambling.

*Id.* (emphasis added).

In support of this argument, Kalshi merely recites that it is registered with the Commodity Futures Trading Commission (CFTC) and asserts that the CFTC has "exclusive jurisdiction" under the Commodity Exchange Act (CEA). Dkt. 21 at 8. This, however, is simply an argument for preemption, which Kalshi readily admits does not support removal. *See id.* ("Kalshi's

PLAINTIFF STATE OF WASHINGTON'S REPLY
IN SUPPORT OF ITS MOTION TO REMAND
NO. 2:26−cv−01062−JCC – 2

argument for removal is not based on preemption."). Washington's Gambling Act, on its face, makes no reference to federal law and, as set forth in Washington's Motion, courts—including this Court and the Ninth Circuit Court of Appeals—turn to Washington state law to determine what constitutes illegal "gambling" under the Gambling Act. Dkt. 17 at 9-11. Kalshi identifies no case interpreting the Gambling Act by reference to federal law, nor any authority supporting its position that such reference is required.

Moreover, as set forth in the Motion, this Gambling Act exception will only arise if Kalshi raises it as an *affirmative defense*, Dkt. 17 at 10, and defenses do not establish a right to removal. *Beneficial Nat. Bank*, 539 U.S. at 6 ("To determine whether the claim arises under federal law, we … ignore potential defenses"). It is clear from the face of the statute that Washington need only prove Kalshi's activities fall within the statutory definition of "gambling" in the first sentence of Wash. Rev. Code § 9.46.0237. The burden is not on Washington to also prove that Kalshi's activities are not "contracts for the purchase or sale at a future date of … commodities," any more than Washington must prove that Kalshi's activities do not constitute "fishing derbies," "parimutuel betting and handicapping contests," or insurance contracts.

Under well-established Washington law, "exceptions to legislative enactments must be strictly construed" and "[o]ne who claims the benefit of such an exception has the burden of bringing himself clearly within it." *Hall v. Corp. of Cath. Archbishop of Seattle*, 80 Wash. 2d 797, 801 (1972). Applying this rule, this Court's sister District Court recently held that a Washington state statute that includes an express exception for federal law compliance (unlike the Gambling Act), nevertheless did not necessarily raise a federal question because: "By designating federal law compliance as an exception to … liability, the legislature made plain its intent that a party asserting a federal law defense bears the burden of proof." *Washington v. Adams Cnty. Sheriff's Off.*, No. 2:25-CV-99-RLP, 2025 WL 1762373, at *2 (E.D. Wash. June 25, 2025) (ordering remand). The same analysis, and result, applies here.

PLAINTIFF STATE OF WASHINGTON'S REPLY
IN SUPPORT OF ITS MOTION TO REMAND
NO. 2:26−cv−01062−JCC – 3

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

In addition, as pointed out in the Motion, state law provides a definition for "commodity" in the Commodity Transactions Act. Dkt. 17 at 10 (citing Wash. Rev. Code § 21.30.010(9)). Kalshi responds by pointing out that "member[s] of a contract market designated by the commodity futures trading commission" are exempted from the Act. Dkt. 21 at 9 (citing Wash. Rev. Code § 21.30.030(3)). Again, however, Kalshi is relying upon an exception to a statutory prohibition. Even assuming Washington bears the burden to prove that Kalshi's activities do not constitute commodities contracts—which it does not—the statutory definition of "commodity" makes no reference to federal law.

Kalshi's extensive reliance on *Georgia Gambling Recovery LLC v. Kalshi Inc.*, No. 4:25-cv-310 (CDL), 2026 WL 279375 (M.D. Ga. Feb. 3, 2026), is telling. Dkt. 21 at 8-9. Every court to consider the issue has remanded state law gambling claims following removal by Kalshi or its competitor Polymarket, with *Georgia Gambling Recovery* the sole outlier. *See* Dkt. 17 at 5-6. *Georgia Gambling Recovery* has no persuasive value because the court there held that Georgia law required the plaintiff to prove that gambling contracts were illegal under federal law. The U.S. District Court for the District of Nevada readily distinguished on these grounds. *Nevada ex rel. Nevada Gaming Control Bd. v. KalshiEX, LLC*, No. 2:26-cv-00406-MMD-MDC, 2026 WL 579364, at *3 (D. Nev. Mar. 2, 2026), appeal filed No. 26-1304 (Mar. 5, 2026).

Kalshi nevertheless asks this Court to follow the reasoning in *Georgia Gambling Recovery*, ignoring key points of distinction. First, the Georgia statute at issue requires the plaintiff there to show that "gambling contracts" are "void" and, under Georgia law, "whether a gambling contract is void . . . depends on whether the contract is unlawful under the law governing its validity." 2026 WL 279375, at *3. The court concluded that federal law governs the validity of the contracts at issue. *Id.* Here, however, Washington need only show that Kalshi's activities constitute illegal gambling, which, as discussed above, raises only issues of state law. The Nevada District Court distinguished on precisely these grounds. 2026 WL 579364, at *3 ("Here, the Nevada statutes at issue require no interpretation of federal law as the claims are that

PLAINTIFF STATE OF WASHINGTON'S REPLY
IN SUPPORT OF ITS MOTION TO REMAND
NO. 2:26−cv−01062−JCC – 4

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Kalshi's market offers sport and events-based contracts that are wagers subject to Nevada's gaming laws."). Second, the plaintiff in *Georgia Gambling Recovery* expressly alleged that Kalshi's activities violate the Interstate Wire Act of 1961, 18 U.S.C. § 1084, thus raising an issue of federal law. 2026 WL 279375, at *3, n.3.

In addition, the District Court for the Northern District of Ohio distinguished *Georgia Gambling Recovery* on the grounds already discussed above: Kalshi's reliance upon an exception to the statute at issue constituted an *affirmative defense*, the burden of which falls on Kalshi. *Ohio Gambling Recovery, LLC, v. Kalshi Inc.*, No. 4:25-cv-1573, 2026 WL 865788, at *4 (N.D. Ohio Mar. 30, 2026); *see also Kentucky Gambling Recovery LLC v. Kalshi Inc.*, No. 3:25-cv-00054-GFVT, 2026 WL 596107, at *4 (E.D. Ky. Mar. 4, 2026) (same). The same is true here. Kalshi's reliance on an exception to the Gambling Act's definition of "gambling" constitutes an affirmative defense, which does not give rise to federal question jurisdiction.

## C.     Permitting Removal Would Upset the Federal-State Balance

Because Washington has alleged only state law causes of action that do not "necessarily raise" a federal issue, the Court need not conduct any further analysis to conclude removal on the basis of federal question jurisdiction is improper. However, even if the Court finds that a federal issue is necessarily raised, permitting removal would disrupt the federal-state balance approved by Congress.

Kalshi has little to say on this issue. It relies on *Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1185 (9th Cir. 2022), for the proposition that "the federal-state balance approved by Congress is not disrupted where Congress intended the federal government to have comprehensive control." Dkt. 21 at 11-12 (cleaned up). This merely begs the underlying question of whether the CEA preempts Washington state gambling law—an issue Kalshi admits is disputed, and which has resulted in competing outcomes. Dkt. 21 at 11.

In the same vein, Kalshi asserts that should Washington prevail on its state law claims, "Kalshi's conduct would be simultaneously lawful [] under federal law … and unlawful under

PLAINTIFF STATE OF WASHINGTON'S REPLY
IN SUPPORT OF ITS MOTION TO REMAND
NO. 2:26−cv−01062−JCC – 5

Washington's gambling laws," which Kalshi terms an "irreconcilable conflict." Dkt. 21 at 11. This is, again, a preemption argument, which Kalshi claims not to be making. It is also incorrect. As discussed in Washington's Motion, gambling regulation has long been understood to fall within the traditional police powers of the states to protect the health and safety of their citizens. Dkt. 17 at 12-13. Under a longstanding "cornerstone" of preemption jurisprudence, "particularly in those [cases] in which Congress has legislated in a field which the States have traditionally occupied," the U.S. Supreme Court "start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act…." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal punctuation omitted); *see also Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012). There is no irreconcilable conflict.

Similarly, Kalshi's assertion that the CFTC has "exclusive jurisdiction" over its activities has likewise been rejected. In fact, the CEA contains a savings clause which states "[e]xcept as hereinabove provided, nothing contained in this section shall … supersede or limit the jurisdiction … conferred on … other regulatory authorities under the laws of the United States *or any State*." 7 U.S.C. § 2(a)(l)(A) (emphasis added). Courts have accordingly held that the CEA does not expressly preempt state law. *See KalshiEX, LLC v. Schuler*, No. 2:25-cv-1165, 2026 WL 657004, at *8 (S.D. Ohio Mar. 9, 2026) (finding that savings clause "leaves ample room for states to legislate and regulate").

More fundamentally, Kalshi's extensive discussion of preemption issues underscores that removal is not appropriate. *See* Dkt. 21 at 11-12. It is settled law that "a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption." *Caterpillar Inc.*, 482 U.S. at 393. Kalshi's repeated reference, for example, to the CFTC's recently-filed actions "seeking declarations that state gambling laws … violate the Supremacy Clause," is thus wholly inapposite. Dkt. 21 at 11. The CFTC's decision to file affirmative actions raising preemption does not give Kalshi the right to remove in this case, where preemption would only arise as an affirmative defense.

PLAINTIFF STATE OF WASHINGTON'S REPLY
IN SUPPORT OF ITS MOTION TO REMAND
NO. 2:26−cv−01062−JCC – 6

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Finally, Kalshi asserts that because its preemption defense concerns "the proper interpretation of a federal statutory scheme," it is "appropriately resolved by a federal court." Dkt. 21 at 11. The same could be asserted by any defendant raising preemption as a defense. Preemption defenses to state law causes of action pled in state court fall within the proper jurisdiction of the state courts to resolve, and they are more than capable of doing so. *See Takeda v. Nw. Nat. Life Ins. Co.*, 765 F.2d 815, 822, n.10 (9th Cir. 1985) (noting that "the state court to which we remand this case is fully capable to decide issues of preemption").

**D.     Removal is Improper Under 28 U.S.C. § 1442**

Kalshi claims a right to remove under 28 U.S.C. § 1442(a)(1), which applies to federal officers, or persons acting under a federal officer, relating to acts done under color of office, and under 28 U.S.C. § 1442(a)(2), which applies to property holders whose title is derived from a federal officer, where the action puts the validity of United States law at issue. Kalshi draws the Court's attention to the Supreme Court's recent decision in *Chevron USA, Inc. v. Plaquemines Parish, La.*, 146 S.Ct. 1052 (2026). Dkt. 21 at 12. *Chevron*, however, has no application here, as it concerned the proper construction of whether the challenged conduct at issue "related to" the performance of federal duties under Section 1442(a)(1). That question never arises because Kalshi does not claim that it is performing federal duties, instead offering a novel argument that the CFTC is a necessary party and would have a right to remove had it been named in the state court action. Kalshi fails to explain, however, why state court joinder rules confer federal court jurisdiction or why the CFTC would be a necessary party in the first place. Kalshi likewise fails to show that its status as a federally-regulated exchange constitutes "property" to which it holds "title" under Section 1442(a)(2), nor how Washington's claims affect this supposed property interest, much less how they affect the validity of the CEA.

**1.     Removal is improper under 28 U.S.C § 1442(a)(1)**

Kalshi's argument relies on hypotheticals: *if* Washington named the CFTC as a defendant in state court, *then* removal to federal court *would be* appropriate under 28 U.S.C § 1442(a)(1).

PLAINTIFF STATE OF WASHINGTON'S REPLY
IN SUPPORT OF ITS MOTION TO REMAND
NO. 2:26−cv−01062−JCC – 7

But Washington did not name the CFTC as a defendant in state court, and Kalshi still has not explained—nor cited any authority supporting—why failure to name a "necessary party" in state court permits removal to federal court. First, even assuming that the CFTC were a necessary party—which it is not—Kalshi fails to rebut the commonsense point that the appropriate remedy would be to file a motion to compel joinder of the CFTC *in state court*, not to claim a right to removal for itself. Indeed, none of the "artful pleading doctrine" cases Kalshi cites concern a claimed failure to name a necessary party, or federal officer removal at all; rather, all concern issues of federal question jurisdiction. Despite the opportunity to do so, Kalshi has not explained its illogical leap from supposed omitted joinder in state court to federal officer removal under Section 1442(a)(1).

Even if Kalshi bridged this gap, its arguments would still fail because compulsory joinder of the CFTC is not required. Washington state's civil joinder rule, CR 19(a), requires joinder if (1) "in the person's absence complete relief cannot be accorded among those already parties"; or (2) "the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may [] as a practical matter impair or impede the person's ability to protect that interest." Neither prong applies here.

First, joinder is not required under CR 19(a)(1) because complete relief can be accorded without the presence of the CFTC. Washington is seeking to enforce its state gambling laws against Kalshi. It makes no allegations, and seeks no remedy, against the CFTC. Kalshi nevertheless argues that complete relief cannot be accorded because, should Washington prevail, it would be restrained from complying with federal regulations requiring it to provide "impartial national access" to its exchange. Dkt. 21 at 20. As an initial point, it is not clear why Kalshi believes that such an outcome would prevent complete relief in the state court action. Moreover, even accepting that premise, the CFTC does not need to be made a party for Kalshi to raise that issue.

PLAINTIFF STATE OF WASHINGTON'S REPLY
IN SUPPORT OF ITS MOTION TO REMAND
NO. 2:26−cv−01062−JCC – 8

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Indeed, Kalshi is making another preemption argument—this time a conflict or impossibility argument—that it claims not to be the basis of its removal. Nor is the premise correct in any event. First, the regulations merely require "impartial access." *See* 17 C.F.R. §§ 37.202, 38.151. The word "national" does not appear in the authorities cited by the CFTC in the briefs Kalshi cites to this Court. Dkt. 21 at 20. Second, these impartial-access regulations do not require a designated contract market like Kalshi to offer any particular market. They just require impartial access to whatever markets the entity offers. The impartial access rules, in other words, do not require Kalshi to offer its betting market in Washington notwithstanding state gambling prohibitions. They simply mean that Kalshi must offer impartial access to individuals within any state where it has a market.

Kalshi also repeats its argument that complete relief cannot be accomplished without the CFTC because Washington seeks to enjoin "all other persons acting … in concert or participation" with Kalshi. Dkt. 21 at 20. Kalshi provides no explanation for how the CFTC acts "in concert" with Kalshi to offer and advertise illegal gambling in Washington, and Washington's request merely cites the standard for injunctive relief under Washington's Civil Rules.

Second, joinder is not required under CR 19(a)(2). Under this prong, Washington courts determine "first whether the absent party claims a legally protected interest in the action and second, whether the absentee's ability to protect that interest will be impaired or impeded." *Auto. United Trades Org. v. State*, 175 Wash. 2d 214, 223 (2012). According to Kalshi, the CFTC has an interest in having "exclusive jurisdiction" and in preventing potential "undermining of federal regulatory uniformity." Dkt. 21 at 20. Washington's state law claims do not implicate those interests. Washington is not enforcing any state laws against the CFTC, and the CFTC does not face any legal exposure from the relief sought. The U.S. District Court for the District of Nevada reached the same conclusion, holding that because Nevada's claims are "narrowly directed at Kalshi under Nevada law," "[t]he CFTC does not have a 'legal interest'" in the action

PLAINTIFF STATE OF WASHINGTON'S REPLY
IN SUPPORT OF ITS MOTION TO REMAND
NO. 2:26−cv−01062−JCC – 9

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

"notwithstanding its position as to its exclusive jurisdiction under the CEA." *See Nevada*, 2026 WL 579364, at *6. Moreover, it is hardly the case that the CFTC's ability to protect its interests would be impaired by Washington's action against Kalshi under CR 19(a)(2)(A). To the contrary, and as Kalshi is eager to inform the Court, the CFTC has initiated its own actions against several states seeking to vindicate its asserted interests.[1]

Taken to its logical conclusion, Kalshi's position quickly becomes untenable. If, as Kalshi claims, a governmental agency's "active role in regulating" a defendant made that agency a necessary party, Dkt. 21 at 20, then every regulator—state or federal—would be a required party in every case against any regulated entity. *Cf. Andera v. Precision Fuel Components, LLC*, No. C12-0274-JCC, 2012 WL 12509225, *3-4 (W.D. Wash. Aug. 1, 2012) (J. Coughenour) (rejecting federal officer removal argument that would "mak[e] virtually any case in which a defendant carries a federal certification removable").

### 2.    Removal is improper under 28 U.S.C § 1442(a)(2)

Kalshi does not hold "title" to "property" within the meaning of 28 U.S.C. § 1442(a)(2), and, even if it did, Washington's state law claims do not put Kalshi's alleged "property" interest at risk, much less affect the validity of federal law.

First, Kalshi's interpretation of the statutory language reaches far beyond Section 1442's limits derived from its "language, context, history, and purposes." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007). In *Town of Stratford v. City of Bridgeport*, 434 F. Supp. 712, 713-14 (D. Conn. 1977), the District Court traced Section 1442(a)(2)'s roots back to 1833, when it was enacted "to insure a federal forum to persons who took title to property from a revenue officer and faced a challenge to their title from others, such as taxpayers, who claimed that the law under which the revenue officer had seized their property was invalid." When the statute

---

[1] Kalshi offers no argument concerning CR 19(a)(2)(B), so Washington makes no reply.

PLAINTIFF STATE OF WASHINGTON'S REPLY
IN SUPPORT OF ITS MOTION TO REMAND
NO. 2:26−cv−01062−JCC – 10

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

was broadened in 1948, it only expanded the language to include property holders whose title was derived from *any* federal officer, rather than just federal *revenue* officers. *Id.* The statute's purpose and grounding in real, tangible property remained unchanged.

Kalshi identifies no case that has applied Section 1442(a)(2) in any context other than real property derived from a federal officer. The one example it cites involved tribal claims of "beneficial title" to *land*. Dkt. 21 at 16 (citing *Carney v. Washington*, 551 F. Supp. 3d 1042, 1053 (W.D. Wash. 2021)). In *Carney*, this Court found that the "Tribe received beneficial title to the Reservation lands and the tidelands from an officer of the United States, through the Treaty of Point Elliot, in 1855, and an executive order issued by President Ulysses S. Grant, in 1873." 551 F. Supp. 3d at 1053. Kalshi's distinction between possession of land and the right to use land does little to expand Section 1442(a)(2) beyond its purpose and history. Its remaining case authorities interpret the term "property" in areas unrelated to § 1442(a)(2), like whether excise taxes are considered property under a federal wire fraud statute. *See* Dkt. 21 at 21 (citing *Pasquantino v. United States*, 544 U.S. 349, 355-56 (2005)).

Kalshi also mischaracterizes *Manufacturers and Traders Trust Co. v. Fidelity National Title Insurance Co.*, No. 3:12-cv-00744-AA, 2012 WL 5462887, at *4 (D. Or. Nov. 4, 2012), claiming that it "stands for the unremarkable proposition that 'title' is broadly construed." Dkt. 21 at 15, n.3. As discussed in Washington's Motion, the court there found that "the plain and ordinary meaning of the term in question is clear: '*title*' refers to the written instrument that constitutes evidence of a party's ownership interest in *real property*." *Mfrs and Traders Tr.*, 2012 WL 5462887, at *5 (emphasis added).

In sum, no authority stands for the proposition that Kalshi enjoys "title" to "property" as a consequence of its regulation by the CFTC. The only case cited by either party that squarely addressed whether the term property within the meaning of Section 1442(a)(2) means something other than real property, held that it did not. *See St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc.*, LLC, 809 F. Supp. 2d 524, 535 (E.D. La. 2011) (holding that "[u]se of

PLAINTIFF STATE OF WASHINGTON'S REPLY
IN SUPPORT OF ITS MOTION TO REMAND
NO. 2:26−cv−01062−JCC – 11

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

the term 'title' implies that the statute applies only to real property and not a contractual 'property right'"). Moreover, even if Kalshi held "title" to "property" by virtue of being federally regulated, Washington's action does not threaten its federally regulated status. Washington's claims allege that Kalshi is engaged in illegal gambling in the state. It does not seek to revoke or otherwise affect Kalshi's status as a regulated exchange.

Finally, Washington's claims do not affect the validity of any federal law. On this point, Kalshi again repeats its preemption arguments. Dkt. 21 at 17. But Kalshi's anticipated federal preemption defense under the CEA "might at most implicate the interpretation of a federal statute, not the validity." *See Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Ute Distribution Corp.*, 455 F. App'x 856, 862 (10th Cir. 2012) (no basis for removal in case involving mineral rights and hunting/fishing rights); *see also Crow v. Wyo. Timber Prods. Co.*, 424 F.2d 93, 96 (10th Cir. 1970) (no basis for removal where dispute over ownership of timber sold at federal tax sale "d[id] not put in issue the validity of any law of the United States"), *abrogation on other grounds recognized in High Lonesome Ranch, LLC v. Bd. of Cty. Comms. For Cty. of Garfield*, 61 F.4th 1225 (10th Cir. 2023); *Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 586 F. App'x 604, 608 (2d Cir. 2014) (holding that the plaintiff's action "does not challenge the validity of any federal law" where the plaintiff "merely contends that the various federal statutes and regulations [the defendant] has identified do not provide a defense to [the plaintiff]'s claims that [the defendant] violated New York law").

Finally, Kalshi's reading of Section 1442(a)(2) would lead to absurd results, allowing automatic removal by any entity that is authorized by a federal agency to conduct business. The Supreme Court cautioned against such overexpansive interpretation of federal officer removal, specifically holding that "a highly regulated firm cannot find a statutory basis for removal in the fact of regulation alone." *Watson*, 551 U.S. at 153. The Court found that permitting defendants to remove cases simply because they are federally regulated "would expand the scope of the [federal officer removal] statute considerably, potentially bringing within its scope state-court

PLAINTIFF STATE OF WASHINGTON'S REPLY
IN SUPPORT OF ITS MOTION TO REMAND
NO. 2:26−cv−01062−JCC – 12

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

actions filed against private firms in many highly regulated industries. Neither language, nor history, nor purpose lead us to believe that Congress intended any such expansion." *Id.* (internal citation omitted).

## II.    CONCLUSION

For all of the foregoing reasons and as set forth in the Motion, Washington respectfully requests that this Court grant its Motion to Remand in its entirety, including its request for fees and costs.

DATED this 4th day of May, 2026.

NICHOLAS W. BROWN
Attorney General

*s/ Ben Brysacz*
ANDREA ALEGRETT, WSBA No. 50236
JULIA K. DOYLE, WSBA No. 43993
BEN BRYSACZ, WSBA No. 54683
MATT GEYMAN, WSBA No. 17544
SEANN COLGAN, WSBA No. 38769
Assistant Attorneys General
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
andrea.alegrett@atg.wa.gov
julie.doyle@atg.wa.gov
ben.brysacz@atg.wa.gov
matt.geyman@atg.wa.gov
seann.colgan@atg.wa.gov
Attorneys for Plaintiff State of Washington

*I certify that this memorandum contains 4,199 words, in compliance with the Local Civil Rules*

PLAINTIFF STATE OF WASHINGTON'S REPLY
IN SUPPORT OF ITS MOTION TO REMAND
NO. 2:26−cv−01062−JCC – 13

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744