Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON,

        Plaintiff,

v.

KALSHIEX LLC,

        Defendant.

Case No. 2:26-cv-01062-JCC

DEFENDANT KALSHIEX LLC'S
MOTION FOR STAY PENDING
APPEAL OF ORDER GRANTING
REMAND

**INTRODUCTION**

Defendant KalshiEX LLC ("Kalshi") respectfully submits this memorandum in support of its motion to stay the effective date of the Court's remand order (Dkt. No. 25 ("Order")) pending appeal. If the Court is not inclined to grant that relief, Kalshi alternatively requests an interim stay while it seeks a stay pending appeal from the Ninth Circuit. Plaintiff opposes these requests.

Earlier today, Kalshi filed a notice of appeal, invoking its statutory right to appeal the remand order. Unlike a typical remand order, "an order remanding a case" that "was removed pursuant to section 1442" is "reviewable by appeal." 28 U.S.C. § 1447(d). The Supreme Court has confirmed that § 1447(d) authorizes the Court of Appeals to review "all of the defendants' grounds for removal," even those that are not based on § 1442. *BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 237 (2021). This Court should stay remand pending appeal.

DEFENDANT KALSHIEX LLC's MOTION FOR STAY
PENDING APPEAL OF ORDER GRANTING REMAND - 1 -

*First*, the Court should apply the 30-day automatic stay provision under Federal Rule of Civil Procedure 62(a) to the remand order.

*Second*, the Court should grant a discretionary stay pending appeal. Kalshi intends to pursue three issues on appeal, each of which raises serious and novel legal questions. Two of those issues—whether Plaintiff's claims necessarily raise a federal question and whether Plaintiff was required to join the CFTC as a party such that federal officer removal is authorized—are currently being considered by the Ninth Circuit in a substantially similar appeal involving Kalshi and the State of Nevada. *State of Nevada v. KalshiEX LLC*, No. 26-1304 (9th Cir.). The third issue— whether this action implicates a federal property interest and would frustrate the Commodity Exchange Act ("CEA")—has never been decided by any district court (other than this Court in the remand order) or appellate court. Kalshi recognizes the Court's remand order finding against Kalshi on these issues, but the calculus for granting a stay is different. The Court may grant the stay if Kalshi raises serious legal questions, which it has done here.

The balance of equities also strongly favors a stay. Being forced to engage in state-court litigation while the appeal is pending would render Kalshi's appellate rights meaningless and unnecessarily burden the courts and the parties. A pause will allow the Ninth Circuit to provide guidance on these issues, as well as the core federal preemption issue underlying this and many other litigations. Just last month, the Ninth Circuit heard argument on the preemption issue in a related case, and a decision is pending. *KalshiEX LLC v. Assad*, No. 25-7516 (9th Cir.). Allowing Plaintiff's state court action to proceed would create an untenable risk of subjecting Kalshi to conflicting federal and state court decisions.

For these reasons, Kalshi respectfully requests a stay of the remand order pending appeal. At a minimum, and for the same reasons, Kalshi requests that the Court pause execution of its remand order pending Kalshi's request for a stay from the Ninth Circuit. *See Oracle Int'l Corp. v. Rimini St., Inc.*, 2023 WL 5221947, at *5-6 (D. Nev. Aug. 15, 2023).

## BACKGROUND

Kalshi is a CFTC-licensed and regulated exchange, known as a designated contract market ("DCM"). Federal law therefore preempts state regulation of trading on Kalshi, as confirmed by every conceivable marker of legislative intent. The CEA's text expressly preempts state law by granting the CFTC "exclusive jurisdiction" over on-DCM trading. 7 U.S.C. § 2(a)(1)(A). Congress in 1974 deleted the provision that had previously preserved concurrent state jurisdiction, announcing its intent to "preempt the field." H.R. Rep. No. 93-1383, at 35 (1974) (Conf. Rep.). And Congress repeatedly reaffirmed—indeed, expanded—the CFTC's exclusive jurisdiction after courts uniformly recognized that the CEA "preempts the application of state law" regarding trading on federal exchanges. *Leist v. Simplot*, 638 F.2d 283, 322 (2d Cir. 1980) (Friendly, J.).

The CFTC designated Kalshi as a DCM in 2020 following a rigorous application and review process. *KalshiEX LLC v. CFTC*, 2024 WL 4164694, at *4 (D.D.C. Sep. 12, 2024). Since then, Kalshi has been regulated under the CEA alongside other DCMs like the Chicago Mercantile Exchange. Kalshi offers many kinds of event contracts related to climate, technology, popular culture, economics, and agricultural and other tangible commodities. Each contract has a yes (the event will occur) and a no (it will not) position, allowing customers to hedge and trade on financially significant events. In January 2025, Kalshi began offering contracts on sports events. *KalshiEX LLC v. Orgel*, 2026 WL 474869, at *5 (M.D. Tenn. Feb. 19, 2026). Since that time, the CFTC has permitted Kalshi and other prediction markets to list tens of thousands of sports-event contracts without objection.

Over the past year, many state regulators have attempted to regulate and/or ban Kalshi's event contracts, which are subject to the CFTC's exclusive jurisdiction. These issues are currently being litigated around the country. *See, e.g.*, *KalshiEX LLC v. Flaherty*, 172 F.4th 220, 230 (3d Cir. 2026) (holding that the CEA "preempts state gambling laws that seek to regulate futures trading, *i.e.*, Kalshi's sports-related event contracts traded on a DCM under the exclusive jurisdiction of the CFTC"); *KalshiEX LLC v. Johnson*, 2026 WL 1223373, at *9 (D. Ariz. May 5,

2026) (similar).  The United States and CFTC also have filed federal-court actions against Arizona, Connecticut, Illinois, New York, and Wisconsin to enjoin application of state gambling laws to CFTC-regulated DCMs.  *See* Dkt. 21 ("Opp.") at 6; *United States v. Wisconsin*, No. 2:26-cv-749 (E.D. Wis.).  The CFTC also has issued an Advance Notice of Proposed Rulemaking related to Prediction Markets, confirming that it has exclusive jurisdiction over event contracts, including sports-event contracts.  Opp. at 4-5.

Despite all of this, on March 27, 2026, the State of Washington filed a Complaint against Kalshi in state court, alleging that event contracts traded on Kalshi's DCM violate Washington's prohibitions on gambling.  Compl. ¶¶ 2.1, 5.4-5.6, 6.5-6.13.  Notably, Plaintiff's Complaint is not limited to sports event contracts but arguably targets every contract Kalshi offers on its exchange, including those that have been offered for many years on other exchanges, such as weather events. *Id.* at ¶¶ 1.4, 4.22, 4.25.  Kalshi timely removed to this Court.  *See* Dkt. 1, 3.  On May 5, 2026, the Court granted Plaintiff's motion to remand the case to Washington state court.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 62(a) provides that "execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry."  Fed. R. Civ. P. 62(a).  Outside that window, the issuance of a stay pending appeal is an "exercise of judicial discretion," and whether a stay should be granted depends "upon the circumstances of the particular case."  *Nken v. Holder*, 556 U.S. 418, 433 (2009).  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."  *Nken*, 556 U.S. at 433-34.

In deciding whether to grant a stay, courts consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Leiva-Perez v. Holder*,

640 F.3d 962, 964 (9th Cir. 2011) (per curiam) (quoting *Nken*, 556 U.S. at 434).  The last two factors "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.

"On a motion for a stay . . . pending appeal, a likelihood of success on the merits is a particularly troublesome factor because it requires the court to essentially predict that it has rendered an erroneous decision." *U.S. Bank, N.A. v. SFR Invs. Pool 1, LLC*, 2021 WL 9316302, at *2 (D. Nev. Mar. 8, 2021) (cleaned up).  It is enough that the movant has "raised serious legal questions going to the merits, so serious, substantial, and difficult as to make them a fair ground of litigation." *Id.*; *see McGhee v. N. Am. Bancard, LLC*, 2018 WL 11267348, at *1 (S.D. Cal. Feb. 6, 2018) ("[I]ssues of first impression are considered serious legal questions within the Ninth Circuit."); *In re Lufthansa Technik AG*, 2012 WL 13426717, at *1 (W.D. Wash. Jun. 5, 2012).

## **ARGUMENT**

## I.    THE COURT SHOULD ISSUE AN AUTOMATIC STAY UNDER RULE 62(a)

Rule 62(a)'s automatic-stay provision applies to the Order.  Rule 62 "stay[s] the execution or enforcement of a district court judgment for . . . 30 days after its entry." *City of San Antonio v. Hotels.com, L.P.*, 593 U.S. 330, 333 (2021).  An "order" counts as a "judgment" for Rule 62 purposes if "an appeal lies" from it.  Fed. R. Civ. P. 54(a); *see* 11 Wright & Miller's Federal Practice & Procedure § 2902 (3d ed. 2025) ("Th[e] automatic 30-day stay applies only to judgments as defined in Rule 54(a).").  Because an appeal lies from an order remanding a case removed under § 1442, *see* 28 U.S.C. § 1447(d), Rule 62(a) applies to the Order.

Courts routinely apply Rule 62(a)'s automatic-stay rule to orders remanding cases to state court. *See Town of Pine Hill v. 3M Co.*, 2025 WL 994187, at *1 (S.D. Ala. Apr. 2, 2025); *Grosch v. Tyco Fire Prods. LP*, 2023 WL 5993548, at *8 (D. Ariz. Sept. 15, 2023); *Martin v. LCMC Health Holdings, Inc.*, 2023 WL 5173791, at *1-3 (E.D. La. Aug. 11, 2023).  *But see Nevada v.*

*KalshiEX LLC*, No. 26 Civ. 406 (D. Nev. Mar. 12, 2026), Dkt. No. 63. The Court should do the same here and enter a 30-day stay pursuant to Rule 62(a)'s automatic-stay provision.

## II.     THE *NKEN* FACTORS WARRANT A STAY PENDING APPEAL

The Court should also grant a discretionary stay pending the outcome of Kalshi's appeal because all four *Nken* factors are satisfied here.

### A.     Kalshi Has Raised Serious Legal Questions Satisfying *Nken's* First Prong

#### 1.     There Is Federal Question Jurisdiction Because the Complaint Necessarily Raises Federal Issues

Kalshi has raised "serious legal questions" going to federal question jurisdiction. *U.S. Bank*, 2021 WL 9316302, at *2. Federal question jurisdiction extends to state-law claims embedding a federal issue that is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting" the congressionally approved balance of "federal and state judicial responsibilities." *Gunn v. Minton*, 568 U.S. 251, 258, 264 (2013). Plaintiff's claims satisfy that standard because they cannot be adjudicated without resolving contested questions of federal law. *See* Opp. at 7-10.

The Court disagreed for two reasons. *First*, the Court found that the state statutes targeted activities determined to be gambling under state law, but this overlooks the statutory language at issue. By their own terms, the state statutes at issue require Plaintiff to establish that Kalshi's event contracts are (i) "illegal gambling," Wash. Rev. Code § 4.24.070, and (ii) not "bona fide business transactions" involving "contracts for the purchase or sale at a future date of . . . commodities," Wash. Rev. Code § 9.46.0237. Those issues cannot be determined by reference to state law alone because Kalshi is a CFTC-registered DCM subject to the CFTC's exclusive jurisdiction under the CEA. *Flaherty*, 172 F.4th at 226, 229. Thus, whether offering event contracts is "illegal" or not "bona fide business transactions" requires an analysis of the federal law governing Kalshi's operations.

*Georgia Gambling Recovery LLC v. Kalshi Inc.* is directly on point. There, the plaintiff

DEFENDANT KALSHIEX LLC's MOTION FOR STAY
PENDING APPEAL OF ORDER GRANTING REMAND - 6 -

sued under Georgia law, seeking to recover money lost from event-contract trading, which the plaintiff characterized as "unlawful gambling." 2026 WL 279375, at *3 (M.D. Ga. Feb. 3, 2026). Under Georgia law, however, the money was recoverable only if the "contract [was] unlawful under the law governing its validity." *Id.* Although the Georgia statute made no reference to federal law, the court held that "Plaintiff's ability to sustain a claim upon which relief may be granted necessarily depend[ed] on the interpretation and application of the CEA and the scope of the CFTC's exclusive jurisdiction." *Id.* The same is true here.

*Second*, the Court determined that removal would disturb the federal-state balance provided by Congress because the state has an interest in regulating gambling. As an initial matter, Washington has recognized that it does not have an interest in regulating DCMs because Washington's Commodity Transactions Act states that it does not apply to "[a] person who is a member of a contract market designated by the [CFTC]." Wash. Rev. Code § 21.30.030(3). This squarely applies to Kalshi, which is a CFTC-registered DCM.

Regardless, the core question at stake here is the proper interpretation of a federal statutory scheme—the CEA—which is appropriately resolved by a federal court. Indeed, the Ninth Circuit has found that the "federal-state balance approved by Congress" is not disrupted when "Congress intended the *federal government* to have comprehensive control" over an area. *Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1185 (9th Cir. 2022). That is exactly what Congress intended concerning the regulation of transactions occurring on a DCM. *Flaherty*, 172 F.4th at 230. Removal ensures that this issue will be adjudicated in the forum best positioned to resolve it. And the federal interest is even more pronounced today given recent developments, including the Third Circuit's decision in *Flaherty*, the District of Arizona's decision in *Johnson*, and the CFTC's five federal-court actions against states attempting to apply state gambling laws to DCMs.

DEFENDANT KALSHIEX LLC's MOTION FOR STAY
PENDING APPEAL OF ORDER GRANTING REMAND - 7 -

**2.** **Removal Is Proper Under 28 U.S.C. § 1442(a)(2) Because Kalshi Holds Property Derived from the CFTC and This Action Affects the Validity of the CEA**

Kalshi has also raised "serious legal questions" going to the scope of the federal officer removal statute under § 1442(a)(2). *U.S. Bank*, 2021 WL 9316302, at \*2. That provision authorizes removal of a civil action directed against "[a] property holder whose title is derived from any . . . officer [of the United States or of any agency thereof], where such action . . . affects the validity of any law of the United States." Both those elements are met here because Kalshi's designation as a contract market under the CEA constitutes property derived from the CFTC, and Washington's action directly affects the validity of the CEA. *See* Opp. at 13-16.

The Court's order only addressed the first element, concluding that it was not met because § 1442(a)(2) applies to real, not intangible, property. The Ninth Circuit could readily disagree. Nothing in the text of § 1442(a)(2) limits its reach to real property, and the federal officer removal statute "must be liberally construed." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007) (citation omitted); *see Marathon Petrol. Co. LP v. Arkema, Inc.*, 2025 WL 2528353, at \*4 (W.D. Wash. Sep. 3, 2025). The Supreme Court reaffirmed last month that narrowing constructions that "would leave the [statutory] requirement with little, if any, independent function" must be rejected. *Chevron USA, Inc. v. Plaquemines Parish, La.*, 2026 WL 1040461, at \*8 (Apr. 17, 2026).

There is no textual reason to provide a narrowing construction here. The Supreme Court has recognized that intangible rights with commercial value (such as entitlements to collect money) constitute "'property' as that term ordinarily is employed." *Pasquantino v. United States*, 544 U.S. 349, 355-56 (2005). It is also well settled that a government license confers a "property" right if it is: (1) "capable of precise definition," (2) "capable of exclusive possession or control," and (3) owned by an entity that has "established a legitimate claim to exclusivity." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 903 (9th Cir. 1992). All three criteria are met by Kalshi's designation as a contract market, which enables Kalshi to operate a facility for the trading or processing of swaps, 7 U.S.C. § 7b-3(a)(1), is exclusively controlled by Kalshi,

DEFENDANT KALSHIEX LLC's MOTION FOR STAY
PENDING APPEAL OF ORDER GRANTING REMAND - 8 -

17 C.F.R. § 38.3(d)(1), and may not be suspended or revoked by the CFTC except after notice, hearing, and an opportunity to appeal to federal court, 7 U.S.C. §§ 7b, 8(b).

The Court's remand order cited out-of-circuit district court cases applying § 1442(a)(2) "in instances where real—not intangible—property was at issue." Order at 3. Those cases are inapposite. In *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc.*, 809 F. Supp. 2d 524 (E.D. La. 2011), the defendant argued that it acquired a property right through a contract with a federal officer to perform services. But that is nothing like Kalshi obtaining a license from the CFTC pursuant to the requirements set forth in federal law. The other cases cited in the Court's order involved only real property and so did not address whether other types of property interests are encompassed within § 1442(a)(2). *Town of Davis v. W. Va. Power & Transmission Co.*, 647 F. Supp. 2d 622, 627 (N.D.W. Va. 2007); *Benitez-Bithorn v. Rossello-Gonzalez*, 200 F. Supp. 2d 26, 31 (D.P.R. 2002).

Plaintiff's action also "affects the validity" of the CEA. The Complaint seeks to declare that ***every event contract*** Kalshi offers is "illegal gambling," to enjoin Kalshi from offering them in Washington, to disgorge proceeds, and to enjoin "all other persons acting . . . in concert" with Kalshi. Compl. ¶¶ 7.1-7.9. A state-court order declaring Kalshi's federally authorized event contracts categorically unlawful in Washington is functionally indistinguishable from one revoking Kalshi's federal designation as applied to Washington—it strips Kalshi of the very right the CFTC's designation conferred. The Third Circuit has already held that applying state gambling laws to event contracts on a DCM "directly conflicts with the full purposes and objectives" of Congress and "would create an obstacle to executing the [CEA]." *Flaherty*, 172 F.4th at 230. That conflict places the validity of the CEA—including the definition of "swap," *see* 7 U.S.C. § 1a(47)(A)(ii), and the grant of "exclusive jurisdiction" over DCM trading, *see id.* § 2(a)(1)(A)— squarely at issue. *See Carney v. Washington*, 551 F. Supp. 3d 1042, 1053-54 (W.D. Wash. 2021).

### 3. Removal Is Also Proper Under 28 U.S.C. § 1442(a)(1) Because the CFTC Is a Necessary Party

Plaintiff's "artful pleading" provides an independent basis for removal and raises another serious question. *See Brennan v. Sw. Airlines Co.*, 134 F.3d 1405, 1409, 1412 (9th Cir. 1998). Because the CFTC is a necessary party, removal was authorized under 28 U.S.C. § 1442(a)(1). The CFTC has "sovereign" interests that this litigation would invade, and it has filed five affirmative suits and obtained TRO relief against materially identical state laws. Plaintiff's strategic failure to join the CFTC in this action cannot allow it to defeat jurisdiction. *Cf. Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766, 769 (9th Cir. 1986).

The Court rejected this argument because "[n]othing . . . suggests Plaintiff is directly attempting to interfere with Defendant's CFTC dealings." Order at 3. But that is exactly what Plaintiff's case is doing. Kalshi is subject to a federal mandate to provide "impartial national access" to its platform. *KalshiEX LLC v. Johnson*, No. 2:26-cv-1715, Dkt. No. 49 at 18 (D. Ariz. Apr. 8, 2026). In challenging state actions to regulate DCMs, the CFTC made clear that "state-imposed restrictions on access to markets would . . . make it impossible for the regulated DCMs to comply with federal regulations." *Id*. Thus, relief cannot be adequately granted in the absence of the CFTC's participation concerning this issue.

The Court also stated that Kalshi did not provide "authority for the proposition that a failure to join a necessary Rule 19 party, in and of itself, triggers § 1442(a)(1) removal authority if that party is the United States or its agency." Order at 3. The Ninth Circuit could readily conclude that the question is governed by long-settled "artful pleading" principles, which provide ample authority for authorizing removal in this case. *Brennan*, 134 F.3d at 1409, 1412; *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983).

### B. Kalshi Will Suffer Irreparable Harm Absent a Stay

Kalshi has the statutory right to appeal "all of the . . . grounds for removal" addressed in the Court's remand order, and it intends to exercise that right. *BP P.L.C.*, 593 U.S. at 237; *see* 28

U.S.C. § 1447(d).  But if this Court remands without a stay, Kalshi is likely to suffer substantial irreparable harm for several reasons.

*First*, the state court proceedings would undermine Kalshi's appellate rights.  If the state court resumes jurisdiction, it can proceed, perhaps even to a final judgment on the merits, before the Ninth Circuit can resolve the appeal.  That would render the remand order "irrevocable" without a chance for this court to "take a fresh look at the decision." *Providence J. Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979).  Congress made the judgment that "[a]n order remanding a case to the State court from which it was removed . . . pursuant to section 1442 . . . *shall be reviewable by appeal*."  28 U.S.C. § 1447(d) (emphasis added).  In cases like this, "Congress has expressed a heightened concern for accuracy, authorized appellate review, and accepted the delay it can entail." *BP P.L.C.*, 593 U.S. at 245.  Functionally stripping Kalshi of its appellate rights would subject it to irreparable harm, contrary to Congress's intent in providing for appellate review in Section 1447(d). *Zielinski v. First Nat'l Ins. Co. of Am.*, 2020 WL 2507993, at *1 (W.D. Wash. May 15, 2020).

*Second*, the state court proceedings undermine Kalshi's appellate rights in the related Ninth Circuit *Assad* case, which is addressing the same CEA preemption issue underlying this case.  If the state court proceeds to a final judgment, it could deem Kalshi issue-precluded from continuing to litigate CEA preemption issues before the Ninth Circuit in *Assad*.  Worse, it likely would embolden Washington to take the position that it is not bound in state court by any decision the Ninth Circuit renders.  That would create a jurisdictional morass that would worsen if other states were to follow Washington's lead.  Because any "intervening state court judgment or order could render the appeal meaningless," Kalshi faces "severe and irreparable harm if no stay is issued." *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 2016 WL 3346349, at *4 (E.D. Va. June 16, 2016).  By contrast, if the action remains pending in the district court rather than in state court, the Ninth Circuit's ability to resolve the important preemption issues in *Assad* can be

DEFENDANT KALSHIEX LLC's MOTION FOR STAY
PENDING APPEAL OF ORDER GRANTING REMAND - 11 -

preserved.

## C.      The Equities Strongly Favor a Stay

Denying a stay here would create judicial chaos that will harm not only Kalshi, but the public too. There is a "cognizable public interest in promoting judicial economy, and avoiding duplicative litigation and inconsistent rulings by granting a stay." *United States v. Real Prop. & Improv.*, 2015 WL 525711, at *5 (N.D. Cal. Feb. 6, 2015).

Absent a stay, the parties will proceed simultaneously along several tracks: They will brief and argue Kalshi's appeal of the remand order in the Ninth Circuit while litigating Plaintiff's state-law claims in state court—all while Kalshi is litigating the same issues in the Ninth Circuit. This is an untenable situation given that the Ninth Circuit already heard argument in *Assad* concerning the preemption issue and heard argument on whether to stay the remand order in *Nevada v. KalshiEX*. This illustrates exactly the "total chaos" Congress feared from states attempting to enforce their own laws notwithstanding the CEA. H.R. 13113, 93d Cong. 685 (1974) (statement of Sen. Clark). Such wasteful parallel litigation serves no one's interests.

Indeed, if the Ninth Circuit "decide[s] that the Remand Order was improvidently granted and the state court ha[s] entered rulings or judgments in the interim period," it would lead to a "rat's nest of comity and federalism issues." *Northrop Grumman*, 2016 WL 3346349, at *4. "[T]he potential for nightmarish procedural complications arising from parallel proceedings in state and federal court" therefore counsels strongly in favor of a stay as well. *Id.* Allowing the state court to proceed could eventually put this Court in the uncomfortable position of having to sift through and evaluate the state court's prior actions. If a stay is denied, but the Ninth Circuit later concludes that Kalshi properly removed this action, this Court will have to painstakingly unwind the decisions and measures the state court will have already taken. That will inexorably waste judicial and party resources, as well as inviting duplicative and inconsistent decisions.

Staying any remand order also would not prejudice Plaintiff. Washington waited well over

a year after Kalshi began offering sports event contracts to pursue relief, which demonstrates that a temporary pause is not harmful.  Regardless, in cases like this, "Congress has expressed a heightened concern for accuracy, authorized appellate review, and accepted the delay it can entail." *BP P.L.C.*, 593 U.S. at 245.  "[E]ven the most formidable policy arguments cannot overcome a clear statutory directive." *Id.* (quotation marks and citation omitted).  And any purported harm is sharply reduced by Kalshi's willingness to pursue its appeal expeditiously.

### CONCLUSION

For these reasons, the Court should stay the remand order pending appeal.

DATED this 8th day of May, 2026.

I certify that this memorandum contains 4,155 words, in compliance with the Local Civil Rules.

CORR CRONIN LLP

*/s/ Steven W. Fogg*
Steven W. Fogg, WSBA No. 23528
1015 Second Avenue, Floor 10
Seattle, WA  98104-1001
Ph: (206) 625-8600
sfogg@corrcronin.com

MILBANK LLP

NEAL KUMAR KATYAL (*Pro hac vice*)
JOSHUA B. STERLING (*Pro hac vice*)
WILLIAM E. HAVEMANN (*Pro hac vice*)
GRANT R. MAINLAND (*Pro hac vice*)
ANDREW L. PORTER (*Pro hac vice*)
NOLA B. HELLER (*Pro hac vice*)
MATTHEW J. LAROCHE (*Pro hac vice*)

*Attorneys for Defendant KalshiEX LLC*